[No. E010244. Fourth Dist., Div. Two. Mar. 9, 1993.]

THE PEOPLE, Plaintiff and Respondent, v.
TERRY FOSTER, Defendant and Appellant.

[No. E011242. Fourth Dist., Div. Two. Mar. 9, 1993.]

In re TERRY FOSTER on Habeas Corpus.

**COUNSEL**

Steven W. Barnes, under appointment by the Court of Appeal, for Defendant and Appellant and Petitioner.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, and Gary W. Schons, Assistant Attorney General, for Plaintiff and Respondent.

## OPINION

**DABNEY, J.**—A jury found defendant Terry Foster guilty of residential burglary (Pen. Code, § 459)[1] and not guilty of arson (§ 451, subd. (b)). The court imposed five years' supervised probation on the conditions, among others, that Foster (1) pay a $4,000 restitution fine, to be stayed upon successful completion of probation; (2) serve 365 days in county jail; (3) pay $7,040 plus a 10 percent fee as restitution to Farmers Insurance Company; and (4) pay $8,000 plus a 10 percent fee as restitution to the victim.

On appeal, Foster claims that: (1) in ordering restitution to the victim, the court could not rely solely on the victim's uncorroborated statement as to the original cost of the stolen property; (2) the court could not order restitution to the insurance company because the insurance company was not a victim; and (3) he received ineffective assistance of counsel because of his trial counsel's failure to object to the valuation of the victim's loss and to the condition of restitution to the insurance company.

In a concurrent petition for writ of habeas corpus, Foster repeats his contention that he received ineffective assistance of counsel.

### FACTS

Defendant burglarized a cabin in Crestline in summer 1988 and took food, beer, stereo equipment, Native American artifacts, camping equipment, a cowskin rug, an Indian rug, and a Persian rug. Other facts are set forth as necessary in the discussion.

### DISCUSSION

*E010244*

### 1. *Evidence Supporting Restitution Award.*

A condition of Foster's probation was that Foster pay restitution of $8,000 to the victim, representing the original cost of a Persian rug for which the victim received no payment from her insurance company. ■ Foster contends the court could not rely on the victim's uncorroborated statement to establish the value of the rug, and moreover, the court was required to

---

[1]All further statutory references are to the Penal Code unless otherwise indicated.

determine the *replacement value* of the rug (§ 1203.04, subd. (d)),[2] not its cost. He argues the order of restitution was therefore unsupported by the record.

Cases have established that the defendant is entitled, on request, to a hearing on the amount. (*People* v. *Scroggins* (1987) 191 Cal.App.3d 502, 508 [236 Cal.Rptr. 569] [error for sentencing court to deny defendant's request for a hearing to determine the victims' actual losses].)

However, the probation report informed Foster of the recommended amount of restitution.[3] Foster's attorney failed to object to the restitution condition in the trial court. Therefore, any error is deemed waived for purposes of appeal. (See *People* v. *Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861]; *People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1160 [261 Cal.Rptr. 93].)

## 2. *Ineffective Assistance of Counsel.*

 Foster argues that his attorney's failure to object to the restitution condition constituted ineffective assistance of counsel. To prevail on the issue of ineffective assistance of counsel, Foster must show that: "(1) trial counsel failed to act in the manner to be expected of reasonably competent attorneys acting as diligent advocates and (2) it is reasonably probable that a more favorable determination would have resulted in the absence of counsel's failings. [Citations.]" (*People* v. *Lewis* (1990) 50 Cal.3d 262, 288 [266 Cal.Rptr. 834, 786 P.2d 892].) He must also show that counsel had no informed tactical reason for the challenged act or omission. (*Ibid.*)

### A. *Valuation of Loss.*

In the probation report, the probation officer reported that the victim had told him the stolen property included a Persian rug that had cost her $8,000, for which she had received no reimbursement from the insurance company. Foster contends his trial counsel should have objected to the probation condition requiring Foster to pay $8,000 to the victim for her loss.

---

[2] " '[R]estitution' means full or partial payment for the value of stolen or damaged property, . . . which losses were caused by the defendant as a result of committing the crime for which he or she was convicted. The value of stolen or damaged property shall be the replacement cost of like property, . . ." (§ 1203.04, subd. (d).)

[3] In *People* v. *Sandoval* (1989) 206 Cal.App.3d 1544 [254 Cal.Rptr. 674], the probation report recommended a $1,000 restitution fine, but did not recommend restitution to the victim. Nonetheless, at sentencing the court ordered restitution of $4,000 to the victim. On appeal, the court ruled that because the restitution order was unexpected, the defendant had been deprived of an opportunity to contest the validity of the award. (*Id.*, at p. 1550.) *Sandoval* does not apply here, because the restitution ordered was the same as that recommended.

First, Foster argues that evidence of the original cost was not sufficient; rather, the court should have determined the replacement cost of the stolen item. (§ 1203.04, subd. (d).) Next, citing section 1203.1d,[4] Foster contends the Legislature intended that proof of replacement cost for purposes of restitution be made by documentary evidence. He argues that the victim's uncorroborated statement about the value of the property does not satisfy the legislative intent expressed in section 1203.1d.

## B. Evidence of Replacement Cost.

Foster argues that the original cost of the stolen property is not an acceptable basis for a restitution award. Rather, Foster argues, the record must contain evidence of the replacement cost of the property. (§ 1203.04, subd. (d).)

In *People* v. *Hartley* (1984) 163 Cal.App.3d 126 [209 Cal.Rptr. 131], the probation officer stated that the amount of restitution should be $2,768, based on the victim's loss statement. Most of that amount was the victim's valuation of three gold rings containing gems. Responding to the defendant's challenge to restitution in that amount, the court stated, "Given the well-known fluctuations to which the markets in gold and gems are subject, and since defendant's obligation to make restitution is statutorily limited to replacement cost, a hearing to determine the replacement cost is clearly warranted." (*Id.*, at p. 130 & fn. 3.)

In *People* v. *Vournazos* (1988) 198 Cal.App.3d 948 [244 Cal.Rptr. 82], the court stated, "In ordering defendant to pay $2,180 in restitution, the trial court relied entirely on the recommendation of defendant's probation officer who, in turn, derived the figure solely from [the victim's] statement of loss and his discussions with [the victim]. Neither the statement nor the testimony of the probation officer established that the sum claimed by [the victim] for loss of property was based on the replacement cost of the property. . . . While a defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property [citation], defendant here was not required to meet that burden inasmuch as the replacement . . . cost of [the victim's] property was not established." (*Id.*, at pp. 958-959.)

Foster argues that *Hartley* and *Vournazos* require the condition of restitution to the victim to be stricken, in that the record contains no evidence of the replacement cost of the rug. We disagree.

[4]Section 1203.1d states, "Documentary evidence, such as bills, receipts, repair estimates, insurance payment statements, payroll stubs, business records, and similar documents relevant to the value of the stolen or damaged property, . . . shall not be excluded as hearsay evidence."

As noted above, the probation report gives notice to the defendant of the recommended amount of restitution, and the hearing offers him the opportunity to rebut the amount before the court determines the amount. (*Hartley*, *supra*, 163 Cal.App.3d at p. 130.) At the hearing, "[t]he defendant bears the burden of proving the victim's restitution estimate exceeds the replacement cost of the stolen property. [Citation.]" (*People* v. *Goulart* (1990) 224 Cal.App.3d 71, 83-84 [273 Cal.Rptr. 477].)

In *Hartley*, the defendant requested a hearing, and the court refused the request. This was found to be error. (*Hartley*, *supra*, 163 Cal.App.3d at p. 130.) However, nothing in *Hartley* suggests that absent a request for a hearing, the court may not rely on the victim's statement of value, even when based on the original cost rather than the replacement cost. Rather, the *Hartley* court stated that a hearing was *warranted* on the facts presented when the defendant requested a hearing. (*Ibid.*) We do not read *Hartley* as holding that the victim's estimate did not constitute evidence supporting restitution. Rather, the *Hartley* court indicated that the court could even rely on a loss report filed with the police when the victim was unavailable to make a direct statement. (*Ibid.*)

In addition, we find the reasoning of the *Vournazos* court unpersuasive. First, it is at odds with the principle that an evidentiary objection must be raised in the trial court before it can be considered on appeal. (Evid. Code, § 353, subd. (a).) Second, it imposes an unwarranted burden on the trial court, the prosecutor, and the victim.[5] For most types of stolen property, the original cost will be a fair approximation of the replacement cost. Third, it is also at odds with the statement in *Hartley* that valuation may be based on a loss report filed with the police. We conclude that absent unusual circumstances, or a showing by the defendant to the contrary, the original cost of a stolen item may be treated as evidence of replacement cost for purposes of restitution. We therefore reject the *Vournazos* opinion on this point.

In reaching this conclusion, we note that the trial court is entitled to consider the probation report when determining the amount of restitution. A property owner's statements in the probation report about the value of her property should be accepted as prima facie evidence of value for purposes of restitution. (Cf. Evid. Code, § 810 et seq. [providing "special rules of evidence applicable to any action in which the value of property is to be

---

[5]Here, the stolen item was a Persian rug. The only information about its value easily available to the victim, unless she happened to be an expert in the field, was the cost of the item to her. Otherwise, she would have had to consult an expert appraiser, probably incurring a fee, to determine the replacement cost of the rug. Even an appraiser's opinion would necessarily be speculative because the appraiser would not be able to examine the age, quality, or condition of the stolen rug.

ascertained."]) " 'Due process does not require a judge to draw sentencing information through the narrow net of courtroom evidence rules . . . [. S]entencing judges are given virtually unlimited discretion as to the kind of information they can consider and the source from whence it comes.' [Citation.]" (*People* v. *Baumann* (1985) 176 Cal.App.3d 67, 81 [222 Cal.Rptr. 32].)

This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. (*People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1160 [261 Cal.Rptr. 93].) When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount. ▮ "[A] defendant's due process rights are protected if he is given notice of the amount of restitution sought and an opportunity to contest that amount; the rigorous procedural safeguards required during the guilt phase . . . are not required." (*Id.*, at p. 1161.)

▮ Here, Foster was given a reasonable opportunity to be heard on the issue of restitution. The probation report recommended the amounts of restitution that the sentencing court adopted at the hearing. Foster argues, however, that his counsel should have objected to the recommended restitution amount.

▮ When a defendant alleges that his counsel failed to take a particular action, he must show a reasonable probability that the attorney's omission affected the outcome of the case. (*Lewis*, *supra*, 50 Cal.3d at p. 288.) ▮ Thus, it is not enough for Foster merely to assert that his counsel should have requested a hearing on the amount of restitution. Rather, he had the burden of demonstrating that the value recommended in the probation report was excessive. In other words, he had to make a sufficient showing that but for his counsel's conduct, the court was reasonably likely to have ordered a lesser amount or no restitution. (See *People* v. *Cotton* (1991) 230 Cal.App.3d 1072, 1086 [284 Cal.Rptr. 757].) However, Foster has given no hint of the nature of any showing he might have made at a valuation hearing to contest the victim's figure. Thus, he has failed to meet his burden of demonstrating that a more favorable outcome was probable, had his counsel objected to the restitution amount and requested a hearing on the amount.

Moreover, counsel could well have had a rational tactical reason for failing to object to the amount of restitution recommended in the probation report. He could easily have concluded that the replacement cost of the rug

exceeded the victim's original cost, and for that reason, it would be detrimental to his client to challenge the figure in the probation report.

Because Foster has shown no prejudice from counsel's omission, and because counsel could well have had a reasonable tactical purpose in failing to object to the amount of restitution, we reject his claim of ineffective assistance.

C. *Documentary Evidence.*

Foster also contends that because section 1203.1d allows the court to consider documentary evidence to establish value for purposes of restitution, the Legislature must have intended that determinations of value be based on evidence other than the victim's uncorroborated statement. We disagree. In many other contexts, an owner's opinion of the value of his or her property is sufficient evidence to establish value. (See Evid. Code, § 810 et seq.) There is no justification for requiring a *more* stringent rule in the context of the relaxed procedure of a hearing to determine conditions of probation. (See *Rivera, supra,* 212 Cal.App.3d at p. 1160.)

An objection on this basis would therefore have been meritless. Foster has not shown his counsel was ineffective for failing to object to the evidentiary basis for the restitution condition.

3. *Restitution to Insurance Company.*

Foster next contends the court erred in ordering restitution to the insurance company, because an insurance company is not included in the statutory definition of "victim." Foster's challenge is multipronged. He argues variously that: (1) an anomaly exists in the statutory schemes governing restitution, in that an insurance company is treated as a victim for some purposes, but not for others; (2) criminal courts have no jurisdiction to determine and enforce civil liability to nonparty insurance companies; (3) the Legislature did not intend to include two definitions of "victim" within a single statute; (4) rules of statutory construction dictate that the court apply the definition of "victim" that is most favorable to the defendant; (5) restitution conditions of probation should not be more onerous than restitution orders if one is sentenced to prison; (6) because of the criminal sanctions facing a defendant who violates probation by failing to pay restitution ordered as a condition of probation, the narrowest definition of "victim" should be used; and (7) insurance companies may be indemnified from their customers instead of through the restitution process. In the discussion which follows, we have combined some of these contentions to facilitate analysis.

The People respond that Foster's attorney failed to object to the award, and any error is deemed waived for purposes of appeal. However, Foster contends the error was jurisdictional. ■ Jurisdictional error may not be waived by the failure to raise it in the trial court. (*People* v. *Williams* (1989) 207 Cal.App.3d 1520, 1524 [255 Cal.Rptr. 778].) We therefore begin with a review of the statutory scheme which governs restitution to determine the court's power to order restitution to an insurance company.

A. *Statutory Overview.*

When probation is *granted* to a defendant, sections 1203.1 and 1203.04 govern restitution imposed as a condition of probation. Section 1203.1 requires the court to "consider whether the defendant as a condition of probation shall make restitution to the victim or the Restitution Fund."

Section 1203.04, subdivision (a) requires that when probation is granted, the court must order restitution, as a condition of probation, "(1) To the victim, if the crime involved a victim. . . . Payments shall be made to the Restitution Fund to the extent the victim has received assistance pursuant to Article 1 (commencing with Section 13959) of Chapter 5 or Part 4 of Division 3 of Title 2 of the Government Code." If the crime did not involve a victim, the court must order restitution to the Restitution Fund. (§ 1203.04, subd. (a)(2).) Neither section 1203.1 nor section 1203.04 defines the term "victim."

Government Code section 13967 governs restitution when probation is *denied.* Subdivision (c) of that section states, "[i]n cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim."

For purposes of restitution under Government Code section 13967, the Legislature has defined a "victim" as a California resident who has sustained injury or death as a direct result of a crime; anyone legally dependent for support upon that person; certain family members or close relations of the victim; and anyone who assumes medical or burial costs for a deceased victim. (Gov. Code, § 13960, subd. (a).) Reimbursable pecuniary losses include "any expenses for which the victim has not and will not be reimbursed from any other source." (Gov. Code, § 13960, subd. (d).)

B. *Purposes of Restitution.*

Restitution serves different purposes, depending on whether the defendant was granted or denied probation.

■ Section 1203 et seq. grants trial courts "broad discretion in the sentencing process, including the determination as to whether probation is appropriate and, if so, the conditions thereof." (*People* v. *Lent* (1975) 15 Cal.3d 481, 486 [124 Cal.Rptr. 905, 541 P.2d 545].) Under section 1203.1, a trial court may impose "any or all [reasonable probation conditions] as it may determine are fitting and proper to the end that justice may be done, that amends may be made to society for the breach of law, for any injury done to any person resulting from that breach, and *generally and specifically for the reformation and rehabilitation of the probationer, . . .*" (Italics added.)

A condition of probation may not be invalidated on appeal unless the condition "(1) has no relationship to the crime of which the offender [was] convicted, (2) relates to conduct which is not in itself criminal, and (3) requires or forbids conduct which is not reasonably related to future criminality . . . ." (*People* v. *Dominguez* (1967) 256 Cal.App.2d 623, 627 [64 Cal.Rptr. 290].)

When restitution is imposed as a condition of probation under section 1203 et seq., rehabilitation of the criminal is the primary goal of restitution. (*People* v. *Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97].) "Implicit in the concept of rehabilitation is the need to first deter criminal activity. Courts have generally found an order requiring the defendant to compensate the victim to be a deterrent to future criminal activity. [Citations.]" (*Goulart, supra,* 224 Cal.App.3d at p. 78, fn. 4.)

In contrast, "Government Code section 13967 is designed to compensate crime victims for economic losses suffered as a direct result of a crime." (*People* v. *Serna* (1988) 203 Cal.App.3d 728, 730 [249 Cal.Rptr. 861]; see also *People* v. *Miller* (1989) 216 Cal.App.3d 758, 761 [265 Cal.Rptr. 77].) Although rehabilitation of the criminal is an ancillary purpose of a restitution award under this section, the primary purpose is to compensate California residents who suffer loss as a result of crime.

C. *"Anomalous" Treatment of Insurance Company as a Victim.*

■ Case law has established that an insurance company is not considered a victim under Government Code section 13959 et seq., governing restitution when probation is denied (see, e.g., *Williams, supra* 207 Cal.App.3d 1520). Foster notes that when the court orders restitution to the Restitution Fund as a condition of probation, as when the victim has already been reimbursed from the Restitution Fund, an insurance company cannot be considered a victim because it does not meet the definition of a person entitled to payment from the Restitution Fund. (Gov. Code, § 13960, subd.

(a).) However, an insurance company *is* treated as a victim under section 1203 et seq., governing restitution to a victim who has not been reimbursed from the Restitution Fund when probation is granted (see, e.g., *People* v. *Calhoun* (1983) 145 Cal.App.3d 568, 572-573 [193 Cal.Rptr. 394]). Foster contends that this situation results in an anomaly that could not have been intended by the Legislature.

In a variation on this argument, Foster contends that the Legislature did not intend to apply two different definitions of "victim" within the same statute. Section 1203.1 states that the court shall consider whether to order the defendant to make restitution to the victim or to the Restitution Fund. He argues that the word "victim" must mean the same thing for either purpose, and if an insurance company is not a victim entitled to reimbursement from the Restitution Fund, by parity of reasoning, an insurance company cannot be a victim entitled to direct restitution under sections 1203.1 and 1203.04.

In a third variation of his basic argument that the statutes have been misconstrued, Foster also argues that principles of statutory construction dictate that the word "victim" have the same meaning for all purposes in sections 1203.1 and 1203.04. (*People* v. *Hernandez* (1981) 30 Cal.3d 462, 468 [179 Cal.Rptr. 239, 637 P.2d 706].) He contends that the word may not have two different meanings depending on whether restitution is ordered to the victim or to the Restitution Fund.

In summary, Foster asserts that the situation of disparate treatment of an insurance company is an anomaly, unintended by the Legislature. An insurance company is treated as a victim only when a defendant, who is granted probation, is ordered to pay restitution directly to the victim. Foster argues that the extent of a defendant's liability for restitution could vary depending on whether the victim had received reimbursement from the Restitution Fund, and the Legislature could not have intended such a result. He argues that cases holding that an insurance company is a victim under section 1203 et seq. were therefore wrongly decided.

Foster overlooks the fact that the two statutory schemes found in the Government Code and the Penal Code apply different definitions for the term "victim" in several other situations. For instance, in *People* v. *Narron* (1987) 192 Cal.App.3d 724 [237 Cal.Rptr. 693], the court held that a county could be considered a victim entitled to restitution as a condition of probation. The court noted that neither section 1203.1 nor section 1203.04 defined "victim." The court reasoned that "the policies of these provisions favor a definition which includes the government where it suffered loss flowing from a defendant's criminal conduct. Including the government as a potential

'victim' accords with the court's discretion to employ probation conditions which ensure 'that amends . . . be made to society for the breach of the law, . . .' (Pen. Code, § 1203.1.) Moreover, the concept of restitution embodies not only the notion that people who suffer loss as a result of criminal activity should be compensated for those losses [citation], but also a perception of the value of restitution as a 'deterrent to future criminality' [citation], and 'to rehabilitate the criminal.' [Citation.] Both aims are furthered by imposing a restitution condition in appropriate cases whether or not the victim is an individual." (192 Cal.App.3d at p. 732.)

*Narron* presents only one example of the different treatment of the term "victim" under section 1203 et seq. and under Government Code section 13959 et seq. Another difference is that under Government Code section 13960, subdivision (a), only a California resident is entitled to reimbursement from the Restitution Fund. No such restriction applies under section 1203 et seq. Thus, a nonresident could be treated as a victim under sections 1203.1 and 1203.04, but not under Government Code section 13967.

These examples demonstrate that the Legislature deliberately intended the term "victim" to have different applications under the two statutory schemes. We therefore see no anomaly in treating an insurance company differently under the two schemes.

In our view, it would create a greater anomaly to apply the scheme apparently envisioned by Foster, under which a defendant's responsibility to make restitution for property he has stolen would depend upon whether the victim had obtained insurance against the loss. This result would ignore that objective of probation conditions which is to deter further criminal activity by requiring the defendant to bear the consequences of his criminal activity.

D. *Restitution as a Civil Judgment.*

Foster contends that a restitution order as a condition of probation has the same effect as a civil judgment for damages to the victim, payable to the insurance company under a subrogation theory. Addressing possible civil liability to the victim is not a proper function of restitution under section 1203.1. (*Goulart, supra,* 224 Cal.App.3d at p. 82.)

In *Williams, supra,* the court held that an insurance company was not a "victim" within the meaning of Government Code section 13960, subdivision (a), and the court therefore had no jurisdiction to award restitution to an insurance company under Government Code section 13967. (*Williams, supra,* 207 Cal.App.3d at p. 1524; accord, *People v. Blankenship* (1989) 213

Cal.App.3d 992, 999-1000 [262 Cal.Rptr. 141].) The *Williams* court reasoned that a restitution order is "in effect a civil judgment for damages against Williams, payable to [the insurance company] on a subrogation theory. [Citation.] Whether [the insurance company] is entitled to such damages is not a matter over which the trial courts had jurisdiction. '[C]ivil liability cannot be a function of restitution in a criminal case.' [Citation.] The criminal judicial process should not be ' " ' . . . used to supplement a civil suit or as a threat to coerce the payment of a civil liability and thus reduce the criminal court to a collection agency.' " [Citations.]' [Citation.]" (*Williams, supra,* at p. 1524.)

Foster argues that *Calhoun,* holding an insurance company was a victim under section 1203 et seq., was wrongly decided because it failed to address the issue of a court's power to create civil liability in a criminal proceeding. As discussed above, the different policies of the two statutory schemes justify treating an insurance company differently.

As the *Goulart* court noted, "[R]estitution by definition impacts potential civil liability, restoring some or all of the value of property taken from a crime victim." (*Goulart, supra,* 224 Cal.App.3d at p. 82.) Applying Foster's argument, all restitution conditions would be invalid. We therefore reject his argument.

### E. *Principles of Statutory Construction.*

■ Under *People* v. *Caudillo* (1978) 21 Cal.3d 562, 585 [146 Cal.Rptr. 859, 580 P.2d 274], statutes relating to the same subject matter should be construed together and harmonized if possible. ■ Foster argues that the courts should therefore apply only one definition of victim for purposes of restitution.

We have no difficulty harmonizing the statutes. The different objectives of the probation statutes and the victim reimbursement provisions of the Government Code justify different applications of the term "victim." The Legislature explicitly recognized this distinction by incorporating a detailed definition of the term "victim" into the Government Code, but not defining the term for purposes of section 1203. Thus, the Legislature left it open for an insurance company to be treated differently under the two statutory schemes. Similarly, a nonresident of California would be treated differently under the two statutory schemes. Like an insurance company, a nonresident is not entitled to payment from the Restitution Fund. A flexible interpretation of the term "victim" best addresses the purpose of the statute. (*Hernandez, supra,* 30 Cal.3d at p. 468.)

Foster also relies on the principle of statutory construction that a statute with penal consequences must be construed most favorably to the defendant. (*People* v. *Gutierrez* (1982) 132 Cal.App.3d 281 [183 Cal.Rptr. 31].) Here, however, the challenged statute relates to a condition of probation, and the purpose of probation is to rehabilitate, not to punish.

Under the statutes governing probation, courts may impose any reasonable conditions that serve justice, make amends to society, and reform and rehabilitate the defendant. (§ 1203.1) For this reason, the principle of statutory construction favoring construction most favorably to the defendant does not apply. The most "favorable" construction may not be the one that best fulfills the objectives of probation conditions. We therefore decline to adopt Foster's proposed construction of the statute.

### F. *"Onerous" Conditions of Probation.*

Next, Foster notes that Government Code section 13959 et seq., with its narrower definition of "victim" applies when probation is denied; section 1203 et seq., with its more inclusive definition of "victim" applies when probation is granted. He argues that because the term "victim" is treated more broadly when probation is granted than when it is denied, probation is more onerous than prison with respect to restitution to victims.

This argument merits little attention. ▮▮ Any defendant who believes that the conditions of his probation are more onerous than imprisonment may of course reject probation and receive his sentence. (See *People* v. *Oppenheimer* (1965) 236 Cal.App.2d 863, 866 [46 Cal.Rptr. 476].) ▮▮ The fact that Foster did not do so speaks for itself. For all of the reasons stated above, we conclude the court properly ruled that an insurance company could be treated as a victim under sections 1203.1 and 1203.04. There was no error, much less jurisdictional error.

### 4. *Ineffective Assistance of Counsel.*

▮▮ Foster contends his attorney was ineffective for failing to object to the probation condition that restitution be made to the insurance company. Because we have determined that an insurance company is appropriately classified as a victim under section 1203 et seq., an objection to the condition would have been unavailing. Counsel may not be criticized for failing to raise a futile objection. (*Lewis, supra,* 50 Cal.3d at p. 289.)

*E011242*

The sole contention in Foster's petition for writ of habeas corpus is that his trial counsel was ineffective for failing to object to the valuation of the

victim's loss for purposes of computing the restitution award and for failing to object to the restitution award to the insurance company. The petition was supported by the declaration of trial counsel, who stated he had not objected to either the valuation of the rug or the payment to the insurance company "because it did not occur to me that there was any reason why I should."

Even in his petition for writ of habeas corpus, defendant has not shown that the value the court placed on the victim's loss was excessive. Foster had the burden of showing that if his counsel had raised appropriate objections, a more favorable result was likely. He did not meet this burden. Because Foster has shown no prejudice from counsel's omission, we reject his claim of ineffective assistance with respect to the valuation of the victim's loss.

Moreover, as we discussed in connection with Foster's appeal, his argument that the court had no jurisdiction to award restitution to the insurance company is meritless. His counsel had no duty to raise a meritless objection. (*Lewis, supra,* 50 Cal.3d at p. 289.)

## DISPOSITION

The judgment is affirmed. The petition for writ of habeas corpus is denied.

Ramirez, P. J., concurred.

**TIMLIN, J.,** Concurring.—With certain exceptions stated below, I concur with the discussion in the majority opinion and I concur completely with the disposition.

However, I disagree with the conclusion contained in the following statement on page 944 of the majority opinion under the heading "Evidence Supporting Restitution Award": "Foster's attorney failed to object to the restitution condition in the trial court. Therefore, any error is deemed waived for purposes of appeal." The majority then cites *People* v. *Walker* (1991) 54 Cal.3d 1013, 1023 [1 Cal.Rptr.2d 902, 819 P.2d 861] and *People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1161 [261 Cal.Rptr. 93] as supporting authority for that proposition. In my view, neither of those two cases support that proposition.

*Walker* basically held in part that a defendant's failure to object to a restitution fine under Government Code section 13967 at or before the time of sentencing waives a claim by the defendant on appeal that he was not advised by the court, pursuant to Penal Code section 1192.5 at the time his guilty plea was being proffered, that one of the consequences of his plea

would be imposition of a mandatory restitution fine. *Walker* does not concern the imposition of probation and the validity of any conditions of probation.

*Rivera*, too, is inapposite to this case. In *Rivera*, defendant was ordered to pay a restitution fine under Government Code section 13967, subdivision (c), which the majority in its opinion here carefully demonstrates is distinctly different, both procedurally and substantively, from restitution ordered paid to victims as a condition of probation. (See maj. opn., *ante*, at p. 947.) In *Rivera*, defendant contended that he was entitled to a jury trial on the "issue of restitution." Without analysis or discussion, our colleagues in Division One merely noted that Rivera neither contested the amount of the restitution fine under Government Code section 13967, subdivision (c), nor sought to have any hearing, by jury trial or otherwise, on the "restitution issue" and, therefore, waived that issue. (212 Cal.App.3d at p. 1160.) This is a far cry from a holding or even dicta suggesting that a defendant's failure to object to a restitution order as a condition of probation is waived. In fact, in *Rivera*, the Attorney General contended that defendant was estopped to raise an issue related to the restitution order because he failed to raise it below, and the *Rivera* court rejected this contention, holding that a sentence which is unauthorized because of an error in the matter of restitution must be vacated and a proper sentence imposed whenever the mistake is brought to the attention of the trial court *or* the reviewing court. (212 Cal.App.3d at pp. 1163-1164.)

Thus, I am not prepared to subscribe to the principle that the failure of a defendant's trial counsel to object to a probationary condition requiring restitution constitutes per se a waiver of an appellate challenge to the legality of such a condition in a particular case. But, more importantly, in this case Foster does not claim on appeal that the imposition of a restitution condition of probation was error. He contends that the court erred in admitting as proof of the amount of restitution payable to the victim-owner the original cost and not the replacement cost of the Persian rug. This is a claim of evidentiary error.

As to this contention, it is my view a waiver doctrine applies but it is one grounded in the principle that no court decision shall be reversed by reason of erroneous admission of evidence unless there appears of record an objection to or motion to exclude or to strike evidence. (*People* v. *Visciotti* (1992) 2 Cal.4th 1, 53 at fn. 19 [5 Cal.Rptr.2d 495, 825 P.2d 388].) The record shows Foster did not object at the sentencing hearing to evidence of the original cost of the Persian rug. Therefore, its admission cannot be attacked on appeal. Further, he did not introduce any evidence on the cost of

replacing the rug to rebut the original cost being considered by the court as the replacement cost. Consequently, the court's implied finding that the value of the rug was $8,000 at the time it was stolen was correct. It had the victim's opinion as the owner of the rug that it originally cost $8,000, and absent contrary evidence, the court could reasonably conclude that its replacement cost was the same as the original cost, $8,000.

The majority in its discussion of whether Foster's trial counsel was ineffective for not objecting to the admission into evidence of the original cost of the rug to establish its replacement value, makes the broad statement on page 946 of its opinion that "For most types of stolen property the original cost will be a fair approximation of the replacement cost." Because there is no evidence in the record to support this comment, I refrain from joining the majority in that remark. Judicial notice of the depreciability of certain personal property and the appreciability of other personal property having unique qualities, viz., antiques, jewelry, art work and even Persian rugs, in my opinion, contradicts such a conclusion.

Finally, I disagree with the suggestion on page 946 of the majority opinion that *People* v. *Vournazos* (1988) 198 Cal.App.3d 948, 958-959 [244 Cal.Rptr. 82] expressed an opinion that the original cost of a stolen item may not be treated as evidence of replacement cost for restitution purposes. My reading of *Vournazos* reveals no comment regarding original cost. *Vournazos* simply concluded that the statement by the owner of personal property to the probation officer as to the value of nonrecovered personal property was not proper evidence upon which to base a restitution amount, unless the owner's statement or the probation officer's testimony could establish that the sum claimed for loss of property was based on the replacement cost. (198 Cal.App.3d at pp. 958-959.)

Appellant's petition for review by the Supreme Court was denied June 24, 1993.