Filed 10/15/13  P. v. Wright CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(El Dorado)

----

| | |
|---|---|
| THE PEOPLE, | C072372 |
| Plaintiff and Respondent, | (Super. Ct. No. P10CRF0287) |
| v. | |
| RANDAL LOY WRIGHT, | |
| Defendant and Appellant. | |

Defendant Randal Loy Wright pleaded no contest in Merced County to theft or unauthorized taking of a vehicle (Veh. Code, § 10851, subd. (a)) and fraudulent removal of a leased vehicle (Pen. Code, § 504a).[1] The trial court placed defendant on three years' felony probation and deferred any finding on victim restitution.

Defendant was granted a certificate of probable cause and appealed, asserting the trial court erred in failing to conduct an evidentiary hearing on his motion to withdraw the plea. The Fifth District Court of Appeal affirmed the judgment of conviction in an unpublished opinion.

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant's probation was transferred to El Dorado County pursuant to section 1203.9 while the appeal was pending. Defendant requested a hearing to dispute the restitution amount. Following a contested hearing, the court imposed $9,804 in victim restitution.

Defendant appeals, contending the restitution award is an abuse of discretion and a 10 percent administrative fee was improperly included in the clerk's minutes. We modify the restitution order and remand for the court to impose the administrative fee.

BACKGROUND

Defendant leased a Mercedes-Benz automobile, but fell behind on the payments and returned the car to the dealership. He later took the car from the dealership, had the tracking device removed, and relocated it to Mexico. At his sentencing hearing, defense counsel informed the court that the car was later brought back and returned to the dealership.

Mercedes-Benz Financial submitted a restitution claim form, signed under penalty of perjury, claiming $9,800.04 in restitution. Attached to the form was a document titled "PAYMENT PLAN," which an attached e-mail explained was "a breakdown of the deficiency balance." The payment plan document showed "RENT DUE" of $11,752.45 with a $3,557.58 offset for a total of $8,194.87. The document listed "SALES EXP" of $235, a "DISPO FEE" of $595, and a "LATE CHG" of $50. The document showed a subtotal of $9,074.87, a tax of $725.17, and a total of $9,800.04.

The document was admitted at the contested restitution hearing. Defense counsel argued the document was not authenticated and there was "nothing to indicate for what purpose that money is claimed." Since there was "nothing about damage to the vehicle, nothing about lost equipment from the vehicle, nothing about a diminution in value of the vehicle," counsel concluded "there's nothing upon which this Court can reasonably base an order of restitution."

2

The trial court applied *People v. Gemelli* (2008) 161 Cal.App.4th 1539 (*Gemelli*), and ordered incorrectly, restitution for $9,804. In support of its ruling, the trial court found the victim presented a verified, admissible claim for its loss. The attached recovery sheet showed a balance of $11,752, an offset of $3,557, for a balance of $8,194, plus the expenses set forth in the document. If the victim "accelerated the contract, and got more credits because they were able to use the vehicle, offsets are set forth within the Vehicle Code." The court also concluded the document claiming the loss and showing how the victim arrived at that loss was legally sufficient to support restitution.

DISCUSSION

I

Defendant contends it was an abuse of discretion for the court to order restitution based on the statement from Mercedes-Benz Financial. We disagree.

Section 1202.4, subdivision (a)(1) declares that "[i]t is the intent of the Legislature that a victim of crime who incurs any economic loss as a result of the commission of a crime shall receive restitution directly from a defendant convicted of that crime." To this end, subdivision (f) provides that "in every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to . . . [¶] . . . [f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

In ordering restitution under section 1202.4, "the trial court is entitled to consider . . . [a] property owner's statements in the probation report about the value of [the]

3

property . . . as prima facie evidence of value for purposes of restitution." (*People v. Foster* (1993) 14 Cal.App.4th 939, 946 (*Foster*).)  Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. (*People v. Fulton* (2003) 109 Cal.App.4th 876, 886.)  "The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property. [Citation.]" (*Gemelli, supra,* 161 Cal.App.4th at p. 1543.)

The evidence here supported the court's finding of $9,804 in victim restitution to Mercedes-Benz Financial.  The court could reasonably conclude the submitted documents showed Mercedes-Benz Financial was deprived of the ability to lease the vehicle for the period it was stolen.  Since there is no evidence defendant made any payments or restitution after he stole the vehicle, the court could conclude that the document showed gross losses equal to the amount left on defendant's lease, plus additional expenses related to taxes and fees, with offsets for the time they were able to lease it again after the car was recovered from Mexico.

Defendant argues that the documents submitted by Mercedes-Benz Financial were not enough to support the restitution order.  A similar argument was rejected in *Foster, supra,* 14 Cal.App.4th 939.  In *Foster*, a defendant who had been convicted of burglary argued that trial counsel was ineffective for failing to object to restitution based only on the victim's uncorroborated statement about the value of the items taken.  (*Id.* at pp. 943, 944-945.)  The *Foster* court rejected defendant's contention that there was insufficient evidence, noting that "[i]n many other contexts, an owner's opinion of the value of his or her property is sufficient evidence to establish value. (See Evid. Code, § 810 et seq.)" (*Id.* at p. 948.)  No reason existed to require a more stringent rule of proof for victim restitution.  (*Ibid.*)  Here, as in *Foster*, the testimony of the victim sufficed to establish the amount of the loss.

Defendant urges us to conclude that the evidence was insufficient by relying on *People v. Vournazos* (1988) 198 Cal.App.3d 948. In *Vournazos*, the trial court ordered restitution solely on the basis of hearsay recounted in the probation officer's report. (*Id.* at p. 958.) The *Vournazos* court noted that ordinarily "a defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property. [Citation.]" (*Id.* at pp. 958-959.) Nonetheless, the court reversed the probation order because it concluded the replacement and repair costs had not been proven by the probation report. (*Id.* at p. 959.)

In contrast to *Vournazos*, evidence of the loss in this case was sustained by documents submitted by the victimized company showing the lost earnings resulting from defendant's theft. This constitutes adequate evidence in support of a restitution order. (*Gemelli, supra*, 161 Cal.App.4th at p. 1543.) Moreover, we agree with subsequent case law that "to the extent *Vournazos* might be read to require more than a victim's statement of loss and a probation officer's recommendation as prima facie evidence of value to determine an appropriate amount of restitution, we decline to follow it for the policy reasons set forth in *Foster, supra*, 14 Cal.App.4th 939." (*Gemelli, supra,* at p. 1543.) It was not an abuse of discretion for the court to apply *Gemelli* rather than *Vournazos*.

Defendant also relies on the following statement from the Supreme Court: "Determination of loss of use necessarily involves evidence as to several factors. Initially, the trial court will have to determine the length of time it took (or reasonably should have taken) the victim to replace the stolen item. Next, the court will multiply the days lost by a reasonable rental rate. In computing what is reasonable, evidence will have to be supplied as to how often the item was rented and the annual (or monthly/daily) income it has historically produced." (*People v. Thygesen* (1999) 69 Cal.App.4th 988, 995 (*Thygesen*).) According to defendant, the trial court did not follow this rule by relying solely on the victim's statement of loss.

*Thygesen* involved the theft of a used cement mixer from an equipment rental company. (*Thygesen, supra*, 69 Cal.App.4th at p. 990.) The probation report listed the cost of a new mixer as $1,400 and a used one as $500 to $700. (*Id*. at p. 991.) At the restitution hearing, the rental company's manager testified that he did not know the age of the mixer, its original cost, or how often the mixer had been rented. (*Ibid.*) Nonetheless, the manager opined that the replacement cost of the mixer was $3,331, and that its rental value had been $3,822 over 13 months after the loss and before it was replaced. (*Ibid.*) The trial court set restitution at $3,822. (*Ibid.*)

The *Thygesen* court reversed because the replacement value of the mixer "should have been predicated on the 'replacement cost of *like* property,' " which meant "what it would cost to replace it with a mixer of like type and age." (*Thygesen, supra*, 69 Cal.App.4th at p. 995, original italics.) *Thygesen* explained that "the purpose of the restitution statute is to make that victim whole, not to give a windfall. [The rental company] is not entitled to replace a used mixer with a brand new one at appellant's expense, absent some extraordinary facts. If [the company] were a car rental agency that lost a 1995 Ford Taurus, it would be entitled to the replacement value of a similar 1995 Ford Taurus, not a 1999 model." (*Ibid.*) The appellate court also questioned the claim of 13 months' of lost rental value, noting: "Logic dictates that had the mixer been that valuable, [the owner] would have replaced it in a heartbeat." (*Ibid.*)

*Thygesen* is readily distinguished. Here, the victim was awarded restitution for the lost revenue from the theft of the vehicle that was returned. In *Thygesen*, the cement mixer was not returned, which made the replacement cost the most logical basis for determining restitution. Where, as here, the stolen item was leased for profit, stolen, and then returned, the lost lease payments resulting from the theft is the economic loss that warrants restitution. The victim provided evidence establishing a prima facie case of loss for the amount awarded by the trial court and defendant presented no contrary evidence. The restitution order was not an abuse of discretion.

Although the trial court did not err in basing the restitution on the document submitted by Mercedes-Benz Financial, the restitution awarded exceeds the losses claimed. Mercedes-Benz Financial claimed losses of $9,800.04, while the trial court awarded $9,804. The trial court clearly intended to award the amount of restitution sought by the victim, and there is no evidence to support the award of an extra $3.96. We will modify the restitution award to the $9,800.04 claimed by the victim.

II

Defendant contends that the administrative fee ostensibly levied pursuant to section 1203.1 must be stricken because it is at variance with the court's pronouncement of the restitution order.

The minute order contains a 10 percent administrative fee of $980.40 added to the $9,804.40 restitution order pursuant to section 1203.1, but the court never imposed this fee when it ordered restitution. Defendant argues that where there is a discrepancy between the abstract of judgment and the court's oral pronouncement of sentence, the oral pronouncement controls. (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385.)

The Attorney General agrees that the clerk's minutes could not add the fee, but asks us to remand the matter back to the court to impose it. While the clerk's minutes cannot add a fee that was never imposed, failure to include a mandatory fee in the judgment does not prevent the later imposition of the fee. (See *People v. Stewart* (2004) 117 Cal.App.4th 907, 910 [remand to impose mandatory section 1464, subd. (a) & Gov. Code, § 76000, subd. (a) penalty assessments]; (*People v. Smith* (2001) 24 Cal.4th 849, 854 [unauthorized sentence can be corrected at any time].) The question presented here is whether the section 1203.1, subdivision (*l*) fee is mandatory or discretionary.

Section 1203.1, subdivision (*l*) states: "If the court orders restitution to be made to the victim, the entity collecting the restitution may add a fee to cover the actual administrative cost of collection, but not to exceed 15 percent of the total amount ordered to be paid. The amount of the fee shall be set by the board of supervisors if it is collected

by the county and the fee collected shall be paid into the general fund of the county treasury for the use and benefit of the county. The amount of the fee shall be set by the court if it is collected by the court and the fee collected shall be paid into the Trial Court Operations Fund or account established by Section 77009 of the Government Code for the use and benefit of the court."

While the county has the discretion to impose the fee, the trial court must impose the fee once the county determines to add one. El Dorado County Code section 1.21.020 states: "In those cases where the court orders restitution to be made to the victim of a crime pursuant to section 1203.1 of the Penal Code there is added a fee to cover the actual administrative cost of collecting the restitution not to exceed two percent of the total amount ordered to be paid. The actual percentage fee shall be established from time to time by resolution of the board after determination by the board of the actual administrative cost of collecting the restitution. The fees shall be paid into the general fund of the county treasury for the use and benefit of the county."

While El Dorado County has established the relevant fee, we cannot discern the exact amount, as it apparently varies according to the amount authorized by the board of supervisors. We remand for the trial court to determine and impose the appropriate fee.

DISPOSITION

The restitution order is modified to $9,800.04 to Mercedes-Benz Financial. The 10 percent section 1203.1, subdivision (*l*) administrative fee in the clerk's minutes is stricken and the case is remanded for the trial court to ascertain and impose the fee. As modified, the restitution order is affirmed in all other respects.

NICHOLSON , J.

We concur:

BLEASE , Acting P. J.

HULL , J.

8