Filed 12/2/15  P. v. Dalrymple CA4/2

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

# FOURTH APPELLATE DISTRICT

# DIVISION TWO

THE PEOPLE,

    Plaintiff and Respondent,

v.

SCOTT MICHAEL DALRYMPLE,

    Defendant and Appellant.

E063160

(Super.Ct.No. FBA1200172)

OPINION

APPEAL from the Superior Court of San Bernardino County.  Lisa M. Rogan, Judge.  Affirmed.

Trenton C. Packer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Charles C. Ragland, and Teresa Torreblanca, Deputy Attorneys General, for Plaintiff and Respondent.

The People charged defendant and appellant, Scott Michael Dalrymple, with one count of felony grand theft by embezzlement (Pen. Code, § 487, subd. (a))[1] and one count of felony embezzlement by an agent (§ 508). On April 18, 2014, defendant pled nolo contendere to one count of misdemeanor petty theft (§ 484, subd. (a)), a lesser included offense to count 1. The trial court sentenced defendant to serve one day in county jail with credit for one day of time served and placed him on 18 months of conditional and revocable informal probation. The trial court retained jurisdiction on the issue of restitution.

On March 6, 2015, the trial court held a restitution hearing. The terms of the plea agreement provided defendant could be ordered to pay restitution "as to the 4 swamp coolers removed from the [victim's apartment] complex ONLY." After receiving evidence, the trial court modified the conditions of probation and ordered defendant to pay $1,230.25 in restitution to the victim, plus an administrative fee of $123.03.

Defendant appeals the restitution order on the ground the trial court abused its discretion by using evidence of the purchase price of the stolen property as a measure of its replacement value. Defendant also seeks to reduce the restitution order by $169.62 on the ground there was insufficient evidence defendant stole three of the pieces of equipment for which the trial court ordered restitution.

We affirm.

---

[1]    All further unlabeled statutory references are to the Penal Code.

2

# I

## FACTUAL BACKGROUND

In 2008 and 2009, Biswas purchased three new swamp coolers to be installed on July 23, 2009 at the apartment complex he owned in Barstow, California. Biswas also installed air conditioning units and electrical meters to serve all the apartments in the complex. On August 13, 2009, the air conditioning system passed inspection.

Defendant performed jobs around the apartment complex as a part-time independent contractor. After use of the air conditioning units was permitted, Biswas asked defendant to remove the swamp coolers from the roof and store them in a closed restaurant space in the front of the building. According to Biswas, defendant removed the swamp coolers, put them in storage, but later took them from the apartment complex in late 2011 without permission.

At a March 6, 2015 restitution hearing, Biswas testified and provided five receipts showing the amounts he had paid for the swamp coolers and equipment needed to install and operate them. A July 21, 2008 receipt from The Home Depot showed Biswas purchased one swamp cooler for $297, six hinges for $7.14, and two screws for $1.58. A July 21, 2008 receipt from Anderson's True Value showed Biswas purchased a cooler pump for $15.59 and a four-way downdraft distributor for $9.29. A second July 21, 2008 receipt from Anderson's True Value showed Biswas purchased a motor for $68.99. A June 4, 2009 receipt from The Home Depot showed Biswas purchased a second swamp cooler for $97.45. A July 22, 2009 receipt from Anderson's True Value showed Biswas purchased a third swamp cooler (a side draft swamp cooler) for $558.59 and a second

3

motor for $85.99.  Together, the receipts showed that before sales tax, Biswas paid $1,141.62 for three swamp coolers, two motors, one pump, one downdraft distributor, six hinges, and two screws.[2]  Biswas requested restitution in the amount of $1,230.25, which presumably includes applicable sales tax.

Biswas also testified about the uses of the peripheral items he purchased.  He said the hinges and screws were used to install a swamp cooler.  He said the pump and downdraft distributor "were needed for the swamp cooler, to install the different ones" and the pump was "used to pump the water to the cooler."  He said the motor bought on July 21, 2008 was necessary "to give power to the frequency for the—for the swamp cooler."  Finally, he agreed the motor bought on July 22, 2009 was required to install the swamp coolers.

After Biswas testified about the items for which he sought restitution, defense counsel asked, "So the items that you're asking for here were new in 2008 and 2009 . . . and they were on the roof of your apartment complex?"  Biswas responded, "They were on the roof."  Defense counsel asked, "And then you had Mr. Dalrymple take those down?" and Biswas responded, "Yes, sir."  When asked whether "those are swamp coolers that are missing," Biswas responded, "Yes. . . .  [¶]  . . . Missing later on.  It was down, but in time—in the course of time, [defendant] took everything."  Biswas also testified that the items for which he seeks restitution were new because they had been used for only one month.

_____

[2]     The receipts show Biswas purchased certain additional items for which he does not seek restitution.

4

Defendant denied taking the three new swamp coolers. He admitted to taking "four rusted-out coolers" from the property, but said they were "not the coolers in question that [Biswas is] stating that I took." According to defendant, he took four old swamp coolers to be recycled. Defendant did not have a receipt, but testified that he would receive $2.50 to $3.50 for each swamp cooler as of the date of the hearing. Defendant testified the new coolers for which Biswas sought restitution "were still there when I left the property." Defense counsel argued defendant understood "he was admitting to taking the four old rusted-out swamp coolers and not the more newer ones" and asked the trial court "not to award any restitution."

The trial court ordered defendant to pay the full $1,230.25 the victim requested.

## II

## DISCUSSION

### A. *Evidence of Purchase Price as a Basis for Replacement Value*

Defendant contends the trial court erred in basing the amount of restitution on the amount the victim paid for the stolen property in 2008 and 2009. According to defendant, by doing so, the trial court improperly awarded the victim for the cost of new equipment instead of the cost of replacement equipment. We disagree.

As an initial matter, defendant forfeited this objection by failing to raise it in the trial court. Defendant's only objections to Biswas's request for restitution were that he had removed old "rusted-out" coolers worth $2.50 to $3.50 as recycled scrap metal, not the new coolers the victim claimed he had taken, and that his plea agreement required him to pay restitution for the old coolers alone. Had defendant objected to the use of

5

purchase prices as evidence of replacement value in the trial court, the court could have exercised its discretion and considered whether the restitution amount should be discounted by some amount based on the age and past use of the newer coolers. (*People v. Prosser* (2007) 157 Cal.App.4th 682, 689.) We see no reason to permit defendant to raise this objection for the first time on appeal.

Even if defendant had not forfeited the issue, he would not prevail. The restitution statute provides, in pertinent part: "To the extent possible, [a] restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including . . . [¶] . . . [f]ull or partial payment for the value of stolen or damaged property. The value of stolen or damaged property shall be the replacement cost of like property. . . ." (§ 1202.4, subd. (f)(3)(A).) We have held that "[f]or most types of stolen property, the original cost will be a fair approximation of the replacement cost." (*People v. Foster* (1993) 14 Cal.App.4th 939, 946 [Fourth Dist., Div. Two], superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) "[A]bsent unusual circumstances, or a showing by the defendant to the contrary, the original cost of a stolen item may be treated as evidence of replacement cost for purposes of restitution." (*People v. Foster*, *supra*, at p. 946.)

"A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious. [Citation.] No abuse of discretion will be found where there is a rational and factual basis for the amount of restitution ordered. '[T]he standard of proof at a restitution hearing is by a preponderance of the evidence, not proof

6

beyond a reasonable doubt.' [Citation.]" (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 [Fourth Dist., Div. Two].) "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property. [Citation.]" (*Id*. at p. 1543.)

We see no circumstances in this case that draw into question the reasonableness of the trial court's reliance on the original purchase price of the stolen property as a basis for its restitution award. Biswas testified the coolers and peripheral equipment defendant stole were used for only one month before he had them removed and stored on his property. Defendant did not contest this testimony, though he was in a position to do so as the person who removed the coolers and placed them in storage. Nor did defendant present rebuttal evidence that the purchase prices were a poor measure of the replacement value of the equipment. Instead, he testified he had removed old, rusted-out coolers and left the new coolers on the property. Biswas testified defendant took the new coolers. The trial court credited the victim's testimony, which was sufficient to support its finding that defendant removed the new equipment. (See *People v. Gemelli*, *supra*, 161 Cal.App.4th at p. 1545 ["'[d]eferential review is particularly necessary when, as here, the factual determination depends in part on judging a witness's credibility,' and we must uphold such a determination if it is supported by substantial evidence. [Citation.]"].)

7

The trial court therefore did not abuse its discretion in relying on the purchase prices of the new equipment to determine a restitution amount. (*Id*. at p. 1546.)

Defendant contends *People v. Thygesen* (1999) 69 Cal.App.4th 988 requires a different result. We disagree. In *Thygesen*, the victim sought restitution for a cement mixer defendant failed to return after renting it. (*Id.* at p. 990.) The manager of the rental business testified at the restitution hearing, but did not know the age of the mixer, other than that "he doubted it was more than 10 years old," and did not testify as to its original cost. (*Id.* at pp. 991, 995.) Instead, he submitted a catalog showing current prices for similar mixers. (*Id.* at p. 991.) The trial court determined that the replacement value was $2,098.98, but allowed the victim to choose the higher value of lost rental income instead. (*Ibid.*) The Court of Appeal rejected the evidentiary basis of the trial court's replacement value determination, holding the victim was "not entitled to replace a used mixer with a brand new one at appellant's expense, absent some extraordinary facts." (*Id*. at p. 995.) This case is entirely different. Here, the trial court heard testimony that the equipment was essentially new when stolen and the victim showed what he had paid for the equipment five to six years prior to the hearing, not what he would pay for the equipment if he purchased it new today. Such evidence provided the trial court with a rational and factual basis for the amount of restitution ordered.

Defendant also relies on *People v. Chappelone* (2010) 183 Cal.App.4th 1159 to argue it is inappropriate to rely on the equipment's original purchase price to gauge replacement costs. *Chappelone* is not relevant to that issue. There, an employee of Target stole a large amount of merchandise made up mostly of heavily discounted and

8

damaged items. (*Id.* at p. 1173.) The trial court awarded Target $234,185 in restitution based on the merchandise's prediscount retail prices. (*Id.* at p. 1168.) The Court of Appeal held reliance on full retail prices was an abuse of discretion because "all testimony at the hearing . . . consistently described the stolen merchandise as largely damaged and unsellable" and concluded that "[t]o claim that most of it was new is simply contrary to the record." (*Id.* at pp. 1175-1176.) Here, there is no similar problem with the evidence of replacement value. The trial court based its award on evidence the equipment was basically new, not damaged and unsellable, and it used prices at which the equipment *actually* sold, not prices a retailer had been forced to discount due to damage. Moreover, the defendant in *Chappelone* presented evidence to rebut the victim's evidence and show the products had been heavily discounted. Defendant presented no evidence to challenge Biswas's evidence concerning the value of the three new swamp coolers. Instead, he chose to maintain he had not taken the swamp coolers Biswas claimed he had taken.

In his reply brief, defendant contends he presented credible evidence that the stolen swamp coolers bought in 2008 and 2009 were not in new condition when he took them. According to defendant, he "provided the only evidence regarding the condition of the stolen swamp coolers" at the time they were stolen when he "testified that they were four rusted-out coolers." This is a misguided attempt to introduce a new insufficiency of the evidence argument in a reply brief. In any event, the new argument fails because it relies on a false premise. Defendant did not testify the swamp coolers purchased in 2008 and 2009 were in rusted-out condition when he took them. Instead, he testified he did not

9

take the new swamp coolers at all, but took four different swamp coolers that were rusted-out. Defense counsel asked defendant, "So you at no time took those new coolers that Mr. Biswas was talking about that he had paid approximately $1200 for, the coolers and the pumps?" Defendant responded, "No, I did not take them. They were still there when I left the property." We therefore reject defendant's challenge to the sufficiency of the evidence that stolen property was in new condition at the time of the theft.

### B. *Sufficiency of the Evidence Defendant Stole Peripheral Equipment*

Defendant contends the trial court erred by including the replacement value of a downdraft distributor and two motors in its restitution award. According to defendant, there was no evidence at the restitution hearing that he took those three items with the swamp coolers. He argues the restitution award should therefore be reduced by $169.62. We disagree.

"'Generally speaking, restitution awards are vested in the trial court's discretion and will be disturbed on appeal only where an abuse of discretion appears.' [Citation.]" 'If there is no substantial evidence to support the award, and assuming no other rational explanation, the trial court will have obviously abused its discretion.' [Citation.]" (*In re Anthony S.* (2014) 227 Cal.App.4th 1352, 1356.)

Biswas testified the downdraft distributors, motors, and other peripherals were used to install and operate the swamp coolers. It is implicit in his testimony that he asked defendant to remove those items from the roof along with the swamp coolers as well as that defendant took them from the property. After Biswas had testified about each item for which he sought restitution, defense counsel asked, "So the items that you're asking

10

for here . . . were on the roof of your apartment complex?" Biswas responded, "They were on the roof." Defense counsel asked, "And then you had Mr. Dalrymple take those down?" and Biswas responded, "Yes, sir." When asked whether "those are swamp coolers that are missing; is that correct?" Biswas responded, "Yes. Missing later on. It was down, but in time—in the course of time, [defendant] took everything." It was reasonable for the trial court, in the context of the detailed testimony about the peripheral items, to understand this testimony as affirming that defendant took all the peripheral items as well as the swamp coolers.

Defendant argues this testimony "does nothing to establish that the distributor and motors were actually taken." We disagree. Defense counsel asked Biswas to specify defendant had taken the swamp coolers located on the roof. Biswas did not agree to the question as framed, but responded that defendant took everything. We hold this evidence is sufficient to support the trial court's implicit finding that defendant took the downdraft distributor and two motors along with the swamp coolers they were used to install and operate. (See *Stafford v. Mach* (1998) 64 Cal.App.4th 1174, 1182.) The trial court did not, therefore, abuse its discretion by awarding restitution for the loss of those items. (*People v. Hove* (1999) 76 Cal.App.4th 1266, 1276 [Fourth Dist., Div. Two].)

### III

### DISPOSITION

We affirm the trial court's restitution order.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ_____
P. J.

We concur:


KING_____
J.


MILLER_____
J.