Filed 9/30/14  P. v. Brice CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>DERRICK DEMONT BRICE,<br><br>  Defendant and Appellant. | H040257<br>(Santa Clara County<br> Super. Ct. Nos. C1102951, C1348955) |

In accordance with a plea agreement, defendant Derrick Demont Brice pleaded no contest in case number C1102951 (hereafter "the grand theft case") to three felonies arising out of a scheme to fraudulently obtain gift cards from retailer Target and to use the gift cards to "purchase" merchandise.  The felonies included one count of second degree burglary (Pen. Code, §§ 459, 460, subd. (b); unless otherwise stated, all further statutory references are to the Penal Code), one count of grand theft (§§ 484, 487, subd. (a)), and one count of conspiracy to commit grand theft (§§ 182, subd. (a)(1), 484, 487, subd. (a)).  As part of the same plea agreement, defendant pleaded no contest to one felony count of failure to appear while released on bail (§ 1320.5) in case number C1348955 (hereafter "the failure to appear case").  In both cases, defendant also admitted enhancement allegations that he had two prior convictions that qualified as strikes under the Three Strikes Law (§§ 667, subds. (b)-(i); 1170.12) and one prior conviction for

which he had served a prison term (§ 667.5, subd. (b)). In exchange for defendant's plea, the prosecution agreed to a prison term of four years "top." The court sentenced defendant to 32 months in prison in the grand theft case. In the failure to appear case, the court reduced the charge to a misdemeanor, sentenced defendant to 100 days in jail, and deemed the sentence served in light of defendant's custody credits. The court imposed fines and fees in both cases, which are not at issue in this appeal. The court also ordered defendant to pay $16,649.63 in victim restitution to Target in the grand theft case.

Defendant challenges the victim restitution order, arguing that (1) the order should be reduced to $3,850.37 because Target did not provide receipts or other documentary evidence supporting a loss in excess of this amount; and (2) the undocumented $12,779.26 portion of the restitution order should be reversed because there is no evidence that it was the result of defendant's crimes. We conclude that the prosecution made a sufficient prima facie showing to support the restitution order that shifted the burden to defendant to present evidence refuting the amount claimed, which he failed to do. We also hold that there was substantial evidence that the conspiracy to which defendant pleaded no contest included thefts at more than one store. Finding no abuse of discretion, we will affirm the judgment.

## FACTS[1]

### Grand Theft and Conspiracy to Commit Grand Theft (Case No. C1102951)

On January 5, 2009, Eddingel Recaido was working as a sales associate in the electronics department at the Target store on Capitol Avenue in San José. Around 7:00 p.m., Recaido received a telephone call from a woman who identified herself as a Target

---

[1] The facts are taken from the evidence presented at the preliminary hearing, the probation report (which contained information from the police report), and defendant's motion under *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*).

2

employee. The caller seemed to be familiar with Target procedures. The caller told Recaido that a customer had recently deposited $8,000 at a Target kiosk to purchase four Target gift cards in the amount of $2,000 each and that the $8,000 would be transferred to Recaido's store electronically. The caller described the female customer, who was waiting in the electronics department, and instructed Recaido to give the gift cards to the customer. Recaido completed the transaction as instructed. Recaido testified that the $8,000 was never transferred to his store.

Approximately 30 minutes later, Recaido saw defendant make a large purchase from another sales associate in the electronics department using two $2,000 gift cards. Defendant bought three iPads, a Bose "boom box," a flat screen television, and an MP3 player; the total cost of the items was $3,850.37. After defendant left the store, Recaido checked the identification numbers on the gift cards and determined that defendant had used two of the four cards Recaido had just given the female customer. Recaido reported the incident to Target's asset protection department, which started an investigation. Target reported the incident to San José Police on January 8, 2009. (Target also cancelled the two unredeemed gift cards that Recaido had issued on January 5, 2009.)

In 2009, Target assets protection investigator Don Hanlon investigated a series of thefts that occurred in December 2008 and January 2009 involving the fraudulent acquisition and use of gift cards at Target stores in "several cities in the San Francisco Bay Area." In each case the modus operandi was similar to that used in the Capitol Avenue store in San José: a woman called the electronics department, claimed to be a Target employee, and instructed an actual Target employee to issue three or four gift cards in the amount of $2,000 each to a " 'customer,' " who would obtain the gift cards without paying for them. Later, another person would purchase electronics and other items with the gift cards. According to Hanlon's notes—which defendant attached to his *Romero* motion—$21,000 in gift cards were obtained from three different Target stores in this manner. The prosecution noted that the scam was carried out at the Daly City

3

store on December 26, 2008, the San Leandro store on January 2, 2009, and the Capitol Avenue store in San José on January 5, 2009 (the incident described above). The prosecution also noted there was an unsuccessful attempt to perpetrate the same scheme at a Target store in Pinole on January 7, 2009. Target surveillance identified "the vehicle [that] was used in multiple thefts" (a Dodge Durango) and a records check revealed that the Durango was registered to defendant.

At the time of the offenses, defendant was on parole. Six months after the theft at the San José Target store, San José Police Officers David Moody and Mike Roberson and Daly City Police Officer Joe Bocci interviewed defendant in the presence of his parole agent at the parole office in Oakland. The officers' objectives were to have defendant identify himself in photographs obtained from Target's surveillance video and to identify the two women involved in the scam. Defendant identified himself in surveillance photos "as the person who made the purchases with the stolen gift cards." In particular, defendant identified himself in photos that showed him standing at the electronics counter and "pushing on a cart full of stuff" at the Capitol Avenue store in San José on January 5, 2009. Defendant said he met the two women at a strip club in San Francisco. The women provided the gift cards and asked him to buy particular items for them. Defendant told the officers he used gift cards the two women provided him at several different Target locations throughout the Bay Area. In his *Romero* motion, defendant argued that he "was essentially the hired muscle"; he would "purchase large electronic items, and transport those items for the ladies in his truck." In return, the women allowed defendant to keep one of the televisions and some of the gift cards that had balances remaining on them. Defendant also gave some of the gift cards to members of his family, two of whom he identified in surveillance photos that were taken when those family members used the cards.

*Failure to Appear (Case No. C1348955)*

After his arrest in the grand theft case, defendant posted bail. On October 25, 2011, he failed to appear for a hearing in the grand theft case and a bench warrant was issued. He was arrested on the bench warrant on November 13, 2012—more than a year after he failed to appear—and was taken into custody.

## PROCEDURAL HISTORY

The prosecution filed its original complaint in the grand theft case in March 2011. The complaint contained two felony counts arising out of the events at the San José Target store on January 5, 2009: one count of second degree burglary (§§ 459, 460, subd. (b)) and one count of grand theft (§§ 484, 487, subd. (a)). The complaint also contained enhancement allegations that defendant had one prior conviction within the meaning of the Three Strikes Law (§§ 667, subds. (b)-(i), 1170.12) and one prison prior (§ 667.5, subd. (b)).

A warrant was issued for defendant's arrest in March 2011 and he was arrested in July 2011. Defendant posted bail the following day.

On October 25, 2011, the prosecution filed a first amended complaint, which contained the same allegations as before, but added enhancement allegations that defendant had a second strike prior (§§ 667, subds. (b)-(i), 1170.12). That same day, defendant failed to appear for a hearing and a bench warrant issued for his arrest. Defendant eluded police for over a year; he was arrested on the bench warrant on November 13, 2012.

The court conducted a preliminary hearing in December 2012. The witnesses included Target sales associate Recaido and San José Police Officer Moody. Defendant was held to answer on the charges in the amended complaint.

5

In December 2012, the prosecution filed an information that contained the same charges as the complaints: one count of second degree burglary (§§ 459, 460, subd. (b)) and one count of grand theft (§§ 484, 487, subd. (a)) arising out of the theft at the San José Target store on January 5, 2009. But the information added a third count alleging that "between December 26, 2008 and January 12, 2009, in the County of Santa Clara," defendant "did conspire together and with others to commit" grand theft. The information alleged three overt acts in furtherance of the conspiracy, all occurring "on or about 12/26/08-1/12/09" "at and in the County of Santa Clara." The conspiracy count alleged as overt acts that unnamed persons "deceived Target employee [*sic*] regarding the issuance of gift cards," and "obtained fraudulently gift cards," and that defendant "[u]sed fraudulently obtained gift cards and stole electronic items."

The information contained the same enhancement allegations as the amended complaint: two strike priors and one prison prior. The strike priors were based on two 1993 convictions for assault with a deadly weapon other than a firearm (§ 245, subd. (a)(1)).[2] The prison prior was based on a 2008 conviction for receiving stolen property (§ 496, subd. (a)).

On January 25, 2013, the prosecution filed a new and separate complaint alleging one felony count of failure to appear (§ 1320.5). This complaint contained the same enhancement allegations as the information in the grand theft case.

At a change of plea hearing in May 2013, defendant pleaded no contest to all of the charges in both cases and admitted all of the enhancement allegations. In exchange, the prosecution agreed to a prison sentence of no more than four years, assuming defendant's *Romero* motion was denied.

---

[2] According to defendant's *Romero* motion, when he was 18 years old, defendant and a friend got into a dispute with some other men (alleged drug dealers) over a drug debt. Defendant's friend was killed as a result of the dispute. A few days later, defendant shot two of the men in the legs.

In her pre-sentencing report, the probation officer reported that she spoke with Hanlon via telephone, who stated that Target had "sustained a financial loss of $16,649.63," which "only represents the crimes committed in Santa Clara County." The probation officer recommended the court order $16,649.63 in victim restitution to Target.

Defendant filed a *Romero* motion, in which he asked the court to reduce the felony count in the failure to appear case to a misdemeanor and dismiss the strike priors in both cases. The motion also asserted that Target's restitution claim was "grossly overstated." Defendant argued that the "only incident occurring in Santa Clara County is the one . . . occurring on January 5, 2009. The facts regarding the loss are correctly set out in the pre-sentence report: four gift cards totaling $8,000 were fraudulently obtained. However, only $3,850.37 worth of goods was purchased. Following this transaction, the remaining cards were cancelled, and there was no further loss suffered by Target." (Fns. omitted.) Defense counsel stated that defendant "has never been charged in relation to any of the other stores targeted in this scheme."

At sentencing, the court denied the *Romero* motion, but reduced the charge in the failure to appear case to a misdemeanor. The court sentenced defendant to 32 months in prison in the grand theft case. The court designated the conspiracy count as the principal term and sentenced defendant to the lower term of 16 months, doubled for the strike priors (§ 1170.12, subd. (c)(2)), for a total of 32 months. The court imposed 32 months on both the burglary and grand theft counts (the lower terms of "16 months doubled under the strike law") but stayed execution of those sentences under section 654. In light of defendant's conduct and rehabilitation efforts in local custody, the court struck the additional punishment resulting from the admission of the prison prior. The court awarded defendant 621 custody credits (311 actual days, plus 310 conduct credits). The court imposed fines and fees that are not at issue in this appeal. The court also imposed the minimum restitution fund fine (§ 1202.4, subd. (b)) of $200, and imposed but suspended a parole revocation restitution fine (§ 1202.45) in the same amount.

7

At sentencing, defendant objected to the probation officer's recommendation regarding victim restitution, arguing that he had "entered a plea related to the offense committed in Santa Clara County in San Jose." He contended that the "only loss from that particular act from that store comes to . . . $3,855.37 [*sic*]" and that he had not "been charged in relation to any acts in stores outside of Santa Clara County." The prosecutor responded that defendant had pleaded no contest to a conspiracy that occurred between December 26, 2008, and January 12, 2009, and that "the entire loss . . . from that conspiracy was the $16,000.00." Defense counsel argued that the conspiracy alleged in the information was the conspiracy "to commit the crime that was committed in San Jose in Santa Clara County." The court stated that "conspiracy has jurisdictional aspects included in the Penal Code that go beyond the boundaries of this particular jurisdiction" and ordered defendant to pay $16,649.63 in victim restitution to Target. The court also ordered that defendant was jointly and severally liable with his coconspirators for victim restitution. In the failure to appear case, the court sentenced defendant to 100 days in jail and deemed the sentence served in light of his custody credits.

## DISCUSSION

Defendant challenges the trial court's order awarding Target $16,649.63 in victim restitution. Defendant argues that the restitution order has "two logical components: (1) $3,850.37 to compensate Target for the cost of the electronic items obtained unlawfully on January 5, 2009[;] and (2) $12,799.26 for other unspecified losses." Defendant does not challenge the first component of the order, acknowledging that "there was a factual and rational basis to order victim restitution of $3,850.37" based on the evidence presented at the preliminary hearing. But defendant challenges the second component of the restitution order, arguing that Target "failed to meet its burden of providing sufficient information to make a prima facie showing of [its] alleged loss"

8

because Target failed to provide "any specific information or receipts" to support a claim for $12,799.26.

The Attorney General argues that defendant has "waived" this claim by failing to object to the victim restitution award on this ground in the trial court. Since this claim essentially challenges the sufficiency of the evidence to support the trial court's restitution order, we conclude that it has not been forfeited and will address it on the merits. (*People v. Rodriguez* (1998) 17 Cal.4th 253, 262.)

## I. General Principles Governing Victim Restitution

"In 1982, California voters passed Proposition 8, also known as The Victims' Bill of Rights. . . . Proposition 8 established the right of crime victims to receive restitution directly 'from the persons convicted of the crimes for losses they suffer.' " (*People v. Giordano* (2007) 42 Cal.4th 644, 652 (*Giordano*); see also *People v. Stanley* (2012) 54 Cal.4th 734, 736 (*Stanley*).) Proposition 8 added article I, section 28 to the California Constitution. That section was amended by initiative measure (Proposition 9) on November 4, 2008, and currently provides in subdivision (b)(13): "(A) It is the unequivocal intention of the People of the State of California that all persons who suffer losses as a result of criminal activity shall have the right to seek and secure restitution from the persons convicted of the crimes causing the losses they suffer. [¶] (B) Restitution shall be ordered from the convicted wrongdoer in every case, regardless of the sentence or disposition imposed, in which a crime victim suffers a loss." (Cal. Const., art. I, § 28, subd. (b)(13).)

"California Constitution, article I, section 28, subdivision (b), which is not self-executing, directed the Legislature to adopt implementing legislation." (*Giordano, supra,* 42 Cal.4th at p. 652.) To that end, the Legislature enacted section 1202.4. (*Stanley*, *supra*, 54 Cal.4th at p. 736, citing Stats. 1983, ch. 1092, § 320.1, p. 4058.) Under that code section, the court must order direct victim restitution in "every [criminal] case in

which a victim has suffered economic loss as a result of the defendant's conduct." (§ 1202.4, subd. (f); see also § 1202.4, subd. (a)(1).)  The court "shall require" the defendant to make restitution "based on the amount of loss claimed by the victim . . . or any other showing to the court. . . .  The court shall order full restitution unless it finds compelling and extraordinary reasons for not doing so and states them on the record." (§ 1202.4, subd. (f).)

Section 1202.4, subdivision (f)(3) provides:  "[t]o the extent possible, the restitution order . . . shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct, including, but not limited to," 12 categories of economic losses.  (*Stanley*, *supra*, 54 Cal.4th at p. 737.)  Two of the 12 categories listed in subdivision (f)(3) of section 1202.4 are relevant here.  The first provides that victim restitution shall include "[f]ull or partial payment for the value of stolen or damaged property," defined as "the replacement cost of like property, or the actual cost of repairing the property when repair is possible."  (§ 1202.4, subd. (f)(3)(A).)  The second provides for recovery of "[w]ages or profits lost due to injury incurred by the victim . . . ."  (§ 1202.4, subds. (f)(3)(D).)

A defendant is entitled to a hearing to "dispute the determination of the amount of restitution."  (§ 1202.4, subd. (f)(1).)  "A restitution hearing is usually held at the time of sentencing.  The standard of proof at a restitution hearing is preponderance of the evidence, not reasonable doubt."  (*People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1319, citing *People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542 (*Gemelli*).)

At a victim restitution hearing, a prima facie case for restitution is made by the prosecution "based in part on a victim's testimony on, or other claim or statement of, the amount of his or her economic loss."  (*People v. Millard* (2009) 175 Cal.App.4th 7, 26 (*Millard*).)  Once the prosecution has made a prima facie showing of the victim's loss, " 'the burden shifts to the defendant to demonstrate that the amount of the loss is other

10

than that claimed by the victim.' " (*Ibid.*; see also *People v. Jessee* (2013) 222 Cal.App.4th 501, 507, citing *People v. Prosser* (2007) 157 Cal.App.4th 682, 691.) "While the court need not order restitution in the precise amount of loss, it 'must use a rational method that could reasonably be said to make the victim whole, and may not make an order which is arbitrary or capricious.' " (*People v. Chappelone* (2010) 183 Cal.App.4th 1159, 1172, citing *People v. Thygesen* (1999) 69 Cal.App.4th 988, 992 (*Thygesen*) and other cases.) A restitution order is intended to compensate the victim for his or her actual loss; it is not intended to provide the victim with a windfall. (*Millard*, *supra*, 175 Cal.App.4th at p. 28.)

## II.     Standard of Review

Victim restitution awards are vested in the trial court's discretion and will be disturbed on appeal only when the appellant has shown an abuse of discretion. (*Giordano*, *supra*, 42 Cal.4th 644, 663.) "The abuse of discretion standard is 'deferential,' but it 'is not empty.' [Citation.] '[I]t asks in substance whether the ruling in question "falls outside the bounds of reason" under the applicable law and the relevant facts [citations].' [Citation.] Under this standard, while a trial court has broad discretion to choose a method for calculating the amount of restitution, it must employ a method that is rationally designed to determine the . . . victim's economic loss." (*Id.* at pp. 663-664.) "[A] trial court must demonstrate a rational basis for its award, and ensure that the record is sufficient to permit meaningful review. The burden is on the party seeking restitution to provide an adequate factual basis for the claim." (*Id.* at p. 664.) "No abuse of that discretion occurs as long as the determination of economic loss is reasonable, producing a nonarbitrary result. Factors relevant to that determination will necessarily depend on the particular circumstances before the court." (*Id.* at p. 665.)

### III. Target's statement of loss in the probation report and the probation officer's recommendation were sufficient to state a prima facie claim

"Section 1202.4 does not, by its terms, require any particular kind of proof. However, the trial court is entitled to consider the probation report, and, as prima facie evidence of loss, may accept a property owner's statement made in the probation report about the value of stolen or damaged property." (*Gemelli*, *supra*, 161 Cal.App.4th at pp. 1542-1543, citing *People v. Foster* (1993) 14 Cal.App.4th 939, 946 (*Foster*), superseded by statute on other grounds as stated in *People v. Birkett* (1999) 21 Cal.4th 226, 238-245.) " 'This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' " (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048 (*Keichler*), citing *Foster*, at p. 947.) " 'Since a defendant will learn of the *amount of restitution recommended* when he [or she] reviews the probation report prior to sentencing, the defendant bears the burden at the hearing of proving that amount exceeds' " the amount of the victim's loss. (*In re S.S.* (1995) 37 Cal.App.4th 543, 546 (*S.S.*), quoting *People v. Hartley* (184) 163 Cal.App.3d 126, 130; italics added by *S.S.*) "[W]here the items, amounts, and sources are adequately identified in or with the probation report, the defendant has the burden of refuting them." (*S.S.*, at p. 546.) "Absent a challenge by the defendant, an award of the amount specified in the probation report is not an abuse of discretion." (*Keichler,* at p. 1048.)

Defendant contends that Target has not made a prima facie showing of its alleged loss because Target failed to provide "any specific information or receipts" to support a claim for $12,799.26. Defendant argues that although Target was given an opportunity to provide documentary evidence, receipts, or other evidence to support this component of

its claim, it failed to do so, and that Hanlon's "bare hearsay statement" to the probation officer was an insufficient prima facie showing to support the trial court's order.

Defendant's contention is contrary to the holding in *Foster*. The defendant in *Foster* was ordered to pay $8,000 in victim restitution for a stolen Persian rug. (*Foster*, *supra*, 14 Cal.App.4th at p. 943.) The order was based on the probation officer's report that the victim had said she paid $8,000 for the rug. (*Id.* at p. 944.) On appeal, the defendant argued that "the Legislature intended that proof of replacement cost for purposes of restitution be made by documentary evidence" and that the court could not rely on the victim's uncorroborated statement to establish the value of the rug. (*Id.* at pp. 943, 945.) The court disagreed, explaining, "the probation report gives notice to the defendant of the recommended amount of restitution, and the hearing offers him the opportunity to rebut the amount before the court determines the amount. [Citation.] At the hearing, '[t]he defendant bears the burden of proving the victim's restitution estimate exceeds the replacement cost of the stolen property.' " (*Id.* at p. 946.) The court stated that "[f]or most types of stolen property, the original cost will be a fair approximation of the replacement cost" and held that "absent unusual circumstances, or a showing by the defendant to the contrary, the original cost of a stolen item may be treated as evidence of replacement cost for purposes of restitution." (*Ibid.*) The court held that a "property owner's statements in the probation report about the value of her property should be accepted as prima facie evidence of value for purposes of restitution" (*Ibid.*)

The *Foster* court rejected the defendant's contentions that the victim was required to submit documentary evidence to establish the value of the rug and that determinations of value must "be based on evidence other than the victim's uncorroborated statement." (*Foster*, *supra*, 14 Cal.App.4th at p. 948.) The court explained: "In many other contexts, an owner's opinion of the value of his or her property is sufficient evidence to establish value. (See Evid. Code, § 810 et seq.) There is no justification for requiring a *more* stringent rule in the context of the relaxed procedure of a hearing to determine conditions

13

of probation." (*Foster*, at p. 948, original italics; see also *S.S.*, *supra*, 37 Cal.App.4th at pp. 545-548 & 547, fn. 2 [victim's letter to probation officer itemizing loss was sufficient prima facie showing; "[n]one of the cases hold that the victim must supply a sworn proof of loss or detailed documentation of costs and expenses"]; *Gemelli*, *supra*, 161 Cal.App.4th at p. 1543 [following *Foster* and rejecting contrary authority to the extent that it "might be read to require more than a victim's statement of loss and a probation officer's recommendation as prima facie evidence of value"].)

Following *Foster, S.S.*, and *Gemelli*, we conclude that the prosecution made an adequate prima facie showing of Target's restitution claim to shift the burden of proof to defendant to refute that claim. In *S.S.*, in response to the defendant's contention that "he was entitled to more information concerning the precise nature of the items claimed," the court stated, "there is no basis for a conclusion that he lacked the information sought, or could not by reasonable efforts obtain it. . . . If further details were needed, [the defendant] could attempt to procure them, either by contacting the victim or by requesting that the probation officer do so. Having done none of these things, [the defendant] cannot complain about the lack of detail in the statement." (*S.S.*, *supra*, 37 Cal.App.4th at p. 548.) Similarly, if defendant thought more information was needed to challenge Target's restitution claim, he could have contacted Hanlon, asked the probation officer to contact Hanlon, subpoenaed Hanlon to testify at the sentencing hearing, or asked the court to conduct a separate hearing on victim restitution to permit defendant to obtain evidence and procure Hanlon to testify. He did none of those things.

Defendant argues that the restitution order here is similar to that in *People v. Harvest* (2000) 84 Cal.App.4th 641, 653 (*Harvest*), "where a restitution order of $5[,]500 for funeral expenses was reversed because the claimant failed to provide adequate documentation or testimony in support of the claim." Defendant does not acknowledge the contrary holdings in *Foster*, *S.S.*, and *Gemelli* or explain why we should follow

14

*Harvest* instead. We have reviewed *Harvest* and are not persuaded that it applies in this case.

The defendant in *Harvest* was convicted of first degree murder of one victim (Vigil) and involuntary manslaughter of another (Gialouris). (*Harvest*, *supra*, 84 Cal.App.4th at p. 645.) The trial court's restitution ordered included funeral and burial expenses for both families. On appeal, the defendant challenged the $5,500 awarded to Gialouris's mother, arguing that the restitution order lacked " 'an adequate factual basis.' " (*Id.* at p. 652.) The appellate court agreed and reversed that portion of the order, stating: "The Vigil family could support their claim with documentation and stood ready to testify, but the Gialouris claim had neither of these supports. There was mention of the Gialouris claim in the probation officer's report, which may satisfy notice requirements for due process (e.g., [citation]), but it cannot take the place of evidence." (*Harvest*, at p. 653, citing *Thygesen*, *supra*, 69 Cal.App.4th 988, 995-996.) This was the full extent of the court's analysis in *Harvest*. The *Harvest* court did not consider whether the prosecution had met its burden of establishing a prima facie case, or whether the burden of proof had shifted to the defendant. We therefore conclude that it is inapposite. *Thygesen*, which *Harvest* cited, considered the sufficiency of the evidence to support the trial court's ruling following a contested evidentiary hearing on victim restitution in which the evidence presented at the hearing was different from the estimates contained in the probation report. (*Thygesen*, at pp. 991, 994-996.) Like *Harvest*, the *Thygesen* court did not consider whether the prosecution had met its burden of establishing a prima facie case, or whether the burden of proof had shifted to the defendant. Thus, it is also inapposite.

We conclude the prosecution made a sufficient prima facie showing to support the $16,649.63 victim restitution awarded to Target and shift the burden to defendant to refute the amount claimed. Accordingly, we reject defendant's contention that the trial court abused its discretion when it awarded Target $16,649.63 in victim restitution.

15

#### IV. *The trial court did not abuse its discretion in ordering $16,649.63 in restitution because there was evidence that the conspiracy involved multiple thefts*

Defendant also contends that the victim restitution order should be reduced by $12,799.26 because there is no evidence that the amount ordered in excess of $3,850.37 was the result of "the crimes for which [he] was convicted" and that "the failure to demonstrate that [the] total losses claimed were actually due to [his] conduct resulted in an improper windfall to Target . . . ." He asserts "there was no evidence that any transactions other than the one that occurred on January 5, 2009[,] was [*sic*] part of the same conspiracy to which [he] entered a guilty plea . . . ."

"Section 182 prohibits a conspiracy by two or more people to 'commit any crime.' " (*People v. Johnson* (2013) 57 Cal.4th 250, 257.) " 'Conspiracy is an inchoate offense, the essence of which is an agreement to commit an unlawful act.' [Citations.] Conspiracy separately punishes not the completed crime, or even its attempt. The crime of conspiracy punishes the agreement itself and 'does not require the commission of the substantive offense that is the object of the conspiracy.' [Citation.] 'Traditionally the law has considered conspiracy and the completed substantive offense to be separate crimes.' " (*Id.* at pp. 258-259.) But "an agreement to commit a crime, by itself, does not complete the crime of conspiracy. The commission of an overt act in furtherance of the agreement is also required. . . . Once one of the conspirators has performed an overt act in furtherance of the agreement, 'the association becomes an active force, it is the agreement, not the overt act, which is punishable. Hence the overt act need not amount to a criminal attempt and it need not be criminal in itself.' " (*Id.* at p. 259.) "A member of a conspiracy is criminally responsible for the crimes that he or she conspires to commit, no matter which member of the conspiracy commits the crime." (CALCRIM No. 417; *People v. Hardy* (1992) 2 Cal.4th 86, 188.) Conspiracy cases "may be

16

prosecuted and tried in the superior court of any county in which any overt act tending to effect the conspiracy" is done.  (§§ 182, subd. (a), 184.)

Defendant pleaded no contest to all counts in the grand theft case, including count 3, which alleged a conspiracy to commit grand theft between December 26, 2008 and January 12, 2009.  The dates charged in the conspiracy count were not limited to the January 5, 2009 theft at the San José store.  As for defendant's contention that there was no evidence that the conspiracy involved acts other than the theft at the San José store, Officer Moody testified that defendant told him he had used gift cards that the two unidentified females gave him "at several different Target locations throughout the bay area [*sic*]" to purchase electronics.  Hanlon's notes—which defendant attached to his *Romero* motion—indicated that the conspiracy involved at least three Target stores.  The probation officer reported that surveillance video showed that defendant's vehicle was used in "multiple thefts."  According to the prosecution's opposition to defendant's *Romero* motion, the conspiracy included thefts at the Daly City store on December 26, 2008, at the San Leandro store on January 2, 2009, and at the Capitol Avenue store in San José on January 5, 2009.  Defendant did not dispute those facts.  All of those thefts occurred between December 26, 2008, and January 12, 2009, the time frame charged in the conspiracy count.  And the modus operandi in each case was the same.  Thus, there was substantial evidence that the conspiracy involved more than the theft at the San José store on January 5, 2009.  On this record, we cannot say the court abused its discretion when it ordered restitution for more than the losses at the San José store.

Defendant also argues that Target "did not provide a statement or receipts demonstrating that the additional $12,799.26 in losses were incurred within the time period of the charged conspiracy."  We have already concluded that the prosecution made a sufficient prima facie showing of the amount of Target's restitution claim.  If defendant believed the amount claimed was not causally related to the conspiracy to which he

17

pleaded no contest, it was incumbent upon defendant to present evidence refuting that claim.  He presented no such evidence.

## DISPOSITION

The judgment is affirmed.

_____

MÁRQUEZ, J.



WE CONCUR:





_____

BAMATTRE-MANOUKIAN, Acting P.J.





_____

GROVER, J.