Filed 12/7/20  P. v. Marcus CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>DANIEL JOHN MARCUS,<br><br>    Defendant and Appellant. | 2d Crim. No. B297241<br>(Super. Ct. No. 2015022064)<br>(Ventura County) |

Daniel John Marcus appeals his conviction, by jury, of inflicting corporal injury on a co-habitant (Pen. Code, §273.5, subd. (a)),[1] dissuading a witness (§ 136.1, subd. (c)(1)), and false imprisonment by violence.  (§ 236.)  The jury found that appellant inflicted great bodily injury on the victim, Krysta W. (§ 12022.7, subd. (e)), but found not true an enhancement allegation that he used a deadly weapon to dissuade a witness.  (§ 12022, subd. (b)(1).)  Appellant was found not guilty on a charge of exhibiting a

---

[1] All further statutory references are to the Penal Code unless otherwise stated.

deadly weapon.  (§ 417, subd. (a).)  The jury was unable to reach a verdict on the charge that appellant made criminal threats.  (§422.)  The trial court sentenced appellant as a third strike offender to state prison for a term of 25 years to life for the corporal injury offense (§273.5) and four years for the false imprisonment offense.  (§236.)  It struck enhancements for appellant's prior serious felony convictions (§ 667), and prior prison terms.  (§ 667.5.)  Finally, the trial court ordered appellant to pay victim restitution of $13,445.40 and other fines and fees.

Appellant contends the trial court erred when it allowed the prosecution to introduce evidence of his violent acts against Jennifer B., with whom appellant lived, and Kaci A., a woman he had dated.  He further contends the evidence was insufficient to establish that he inflicted great bodily injury on the victim, Krysta W.  Appellant contends the trial court erred at sentencing when it declined to strike either of his prior convictions and when it imposed victim restitution without sufficient evidence of the victim's damages and without affording appellant a hearing to contest those damages.  We affirm.

FACTS

In 2015, Krysta W. lived in a Ventura apartment with her 10-year old son, and appellant, who had been her boyfriend for about three years.  The couple had a volatile relationship and argued frequently.  Appellant would prevent Krysta from leaving the apartment, take her cell phone and take her car keys during arguments.

On the night of July 7, 2015, Krysta decided to stay on the living room couch, using her cell phone, rather than go to bed with appellant.  He came into the living room and snatched the phone out of Krysta's hands.  She followed him to the bedroom

2

and asked for her phone back.  Appellant refused.  They argued over the phone until appellant told Krysta, "you make me want to chop your head off with my machete."  The statement scared Krysta because she knew appellant kept a cache of knives between the mattress and box spring of their bed.

Krysta walked out of the bedroom, telling appellant "I guess I have no choice but to go and report that then."  As she entered the living room, Krysta heard appellant "charging" after her.  She turned around and saw appellant running toward her at "full speed."  Appellant "tackled" Krysta and they fell back onto a dining table.  Appellant "twist[ed]" Krysta around and threw her to the floor.  Krysta was yelling at appellant to get off of her.  He restrained Krysta on the floor, put his hand over her mouth and told her to be quiet.  When Krysta got quiet, appellant started to apologize and eventually got off of her and let her walk back to the bedroom.

Krysta realized she had urinated on herself during the incident, so she started changing her clothes.  Then, she realized that one of her toes seemed to be broken.  She told appellant she needed to go the emergency room.  He asked her if she was "going to tell."  She told appellant she wouldn't lie.  Appellant pulled out one of his knives and told Krysta he might as well "finish the job now then."  Krysta asked him if he was really going to stab her. Appellant paused and dropped the knife, saying he didn't want to go back to jail.  Krysta told appellant she would say the dogs jumped on her and caused the injury.  She wanted appellant to think she would not report the incident.  Krysta called her friend Rebecca B. to stay with her son while she and appellant went to the hospital.

Appellant stayed at the hospital for about an hour. Then he went back to the apartment to relieve Rebecca B. Rebecca testified, "when [appellant] first walked in, he told me I did it. I hurt her toe." Appellant also admitted that he "football tackled" Krysta, causing them both to hit the table and then hit the floor. Rebecca sent Krysta a text message that appellant had admitted he broke her toe.

At the hospital, Krysta told the doctors that her dogs caused her toe injury. Even after appellant left the hospital, Krysta did not report his abuse. She also did not mention the large bruise forming on her buttock. Doctors had to reset Krysta's toe twice; they believed it was either broken or dislocated. Krysta's toe was sore and she could not walk on its for several weeks. X-rays of the injury showed the toe was not broken nor dislocated. Even after reviewing the radiology report, however, the treating emergency room physician testified Krysta's toe was dislocated.

On July 10, Krysta reported the incident to her therapist. The therapist contacted the police. Appellant was arrested that day.

The Defense. Appellant testified in his own defense. He claimed that, on the night of July 7, he was asleep in bed when Krysta came in screaming about having a broken toe. He took her to the hospital because Krysta was on his medical insurance and he had the insurance card. Appellant stayed there for about an hour and then went home. He said hello to Rebecca B. and then went back to bed because he had to get up early for work. Appellant denied tackling Krysta, pulling a knife, threatening Krysta or admitting any wrongdoing to Rebecca. Krysta reported abuse because she had discovered texts he had exchanged with

4

another woman and was jealous. Appellant also denied ever taking away Krysta's cell phone or car keys.

Appellant's father, Geoffrey Marcus, testified that Krysta and appellant lived with him for about six months, from August 2014 to February 2015. During that time, he overheard appellant tell Krysta to move out five or six times. Krysta would become upset but she didn't move out. Marcus never saw his son get physical with Krysta or yell at her. Appellant told Marcus that the July 7 incident started when he asked Krysta to get a better job. She hurt her foot and went to the emergency room because of an injury caused by the dogs.

Prior Incidents of Domestic Violence. In 2007, appellant had dating relationships with both Kaci A. and Jennifer B. In late June 2007, appellant was involved in a domestic violence incident with Kaci A. The jury did not hear the fact of this incident, but the deputy sheriff who investigated the incident testified appellant pleaded guilty to kidnapping, exhibiting a deadly weapon, false imprisonment and criminal threats in connection with it.

In October 2007, appellant was living in Jennifer B.'s Ventura apartment. The two argued frequently, often late into the night. Appellant would also physically restrain Jennifer from leaving the apartment, leaving bruises on her arms. Jennifer got fired from her job because she was absent or late so frequently. Appellant also broke several of Jennifer's cell phones. He told her that he had members of the Hell's Angles watching her all the time. In late September, 2007, Jennifer told appellant she wanted him to move out. He became enraged and broke some dishes in her kitchen. Jennifer was afraid, so she ran into her bedroom and locked the door. Appellant punched a hole in the

5

door. About a week later, appellant broke another cell phone of Jennifer's.

On October 8, appellant began another violent fight with Jennifer B. after she told him to move out and put his clothing outside the apartment in plastic bags. Appellant left the apartment and Jennifer ran back inside, locking the dead bolt behind her. Appellant kicked the door down. Jennifer had been standing right behind the door, so she fell backwards from the force, hitting her head on a stereo cabinet. When Jennifer was able to get up, she realized her head was bleeding and that appellant was in the apartment. She ran back outside and got in her car. Jennifer started to drive the car out of the apartment complex but appellant jumped on the hood. She stopped. Appellant punched at the driver's side window until it broke. While he crawled in through the window, Jennifer worked her way into the passenger seat. She eventually got out of the car through the passenger side door and started to run away. Jennifer took refuge in a neighbor's apartment until police arrived to arrest appellant.

Appellant pleaded guilty to inflicting corporal injury on a cohabitant, false imprisonment and vandalism as a result of this incident. He was sentenced to a term of four years in state prison as a result of these offenses and those he committed against Kaci A.

## DISCUSSION

Evidence of Prior Offenses. Appellant contends the trial court abused its discretion when it admitted evidence of his prior domestic violence offenses against Kaci A. and Jennifer B. because those offenses were remote in time, dissimilar to the current offenses and more prejudicial than probative. We

6

conclude there was no abuse of discretion. (*People v. Richardson* (2008) 43 Cal.4th 959, 1000-1001.)

"[I]n a criminal action in which the defendant is accused of an offense involving domestic violence, evidence of the defendant's commission of other domestic violence is not made inadmissible by Section 1101 if the evidence is not inadmissible pursuant to [Evidence Code] [s]ection 352." (Evid. Code, § 1109, subd. (a)(1).) Evidence Code section 1109 incorporates Evidence Code section 352 and "makes evidence of past domestic violence inadmissible only if the court determines that its probative value is 'substantially outweighed' by its prejudicial impact." (*People v. Johnson* (2010) 185 Cal.App.4th 520, 531.)

The trial court has broad discretion to determine whether evidence is admissible and its exercise of discretion will not be disturbed on appeal absent a clear abuse. (*People v. Cudjo* (1993) 6 Cal.4th 585, 609.) In determining whether the probative value of evidence is substantially outweighed by its prejudicial impact, we look to Evidence Code section 352. To be excluded, the evidence must "'uniquely tend[] to evoke an emotional bias against a party as an individual, while having only slight probative value with regard to the issues. . . .'" (*People v. Scheid* (1997) 16 Cal.4th 1, 19.)

The trial court did not abuse its discretion when it admitted evidence of appellant's domestic violence offenses against Kaci A. and Jennifer B. To begin with, the prior offenses were not remote in time from the current offenses. Appellant committed the prior offenses in 2007, about eight years before he assaulted Krysta W., and less than five years after he was released from custody for the prior offenses. The present offenses also bear strong similarities to the priors. Appellant habitually

7

broke Jennifer B.'s cell phones just as he would snatch Krysta's phone from her hands during arguments. He further isolated his victims by physically preventing them from leaving the apartments they shared. With both Jennifer and Krysta, appellant became especially violent after the women indicated they wanted to end their relationship with him. The offenses also involve similar types of violence: pushing, tackling, and restraining the victim.

The evidence of appellant's prior offenses was also unlikely to evoke an emotional bias against appellant because the record was clear that appellant pleaded guilty to serious felonies and served a prison sentence in connection with them. The jury had no incentive to punish appellant for his prior offenses by finding him guilty of the current crimes. We further note that appellant was acquitted of the charge that he exhibited a deadly weapon to Krysta, and the jury was unable to reach a verdict on the charge that he made criminal threats to her. This suggests the jury weighed the evidence rather than reaching a verdict based on an emotional bias against appellant.

Evidence of Great Bodily Injury. Appellant contends the evidence was insufficient to prove Krysta suffered great bodily injury because x-rays taken the night of the incident showed her toe was neither broken nor dislocated. To determine whether the great bodily injury finding is supported by substantial evidence, we review the evidence in the light most favorable to the judgment and presume in support of the judgment every fact the trier of fact could reasonably have deduced from the evidence. (*People v. Maury* (2003) 30 Cal.4th 342, 396.) We ask whether the record, considered as a whole, contains substantial evidence from which a reasonable trier of fact could conclude beyond a

reasonable doubt that appellant inflicted great bodily injury as charged.  (*People v. Rayford* (1994) 9 Cal.4th 1, 23*; see also *People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.)

Section 12022.7 mandates an additional term of three years where a defendant "personally inflicts great bodily injury on any person."  (*Id.*, subd. (a).)  It defines great bodily injury as "a significant or substantial personal injury."  (*Id.*, subd. (f).)  Proof that a victim's injury meets this threshold "is commonly established by evidence of the severity of the victim's physical injury, the resulting pain, or the medical care required to treat or repair the injury."  (*People v. Cross* (2008) 45 Cal.4th 58, 66 (*Cross*).)  Abrasions, lacerations, and bruising can constitute great bodily injury.  (*People v. Escobar* (1992) 3 Cal.4th 740, 752.)

Substantial evidence supports the jury's finding that appellant personally inflicted great bodily injury on Krysta.  After appellant charged Krysta, causing her to fall into the dining table and then to the floor, she believed her toe was broken.  Her treating physician concluded the toe was dislocated after reviewing x-rays that found no fracture and a "questionable mild or dorsal disfigurement" of the toe.  Krysta's toe was sore and she could not walk on it for several weeks.  She also had a large bruise on her left buttock that lasted for a long time.  It was very sore and Krysta could not lay down on that area for weeks.

Krysta required medical care for injuries caused by appellant.  She experienced pain and had difficulty walking.  (*Cross, supra,* 45 Cal.4th at p. 66.)  Based on this evidence a reasonable trier of fact could conclude, beyond a reasonable doubt, that Krysta's injuries were "significant or substantial."

(§ 12022.7, subd. (f).) The finding that appellant personally inflicted great bodily injury on Krysta was supported by substantial evidence.

Sentencing Issues. Appellant contends the trial court erred when it denied his motion to dismiss one of his two prior "strike" convictions pursuant to *People v. Vargas* (2014) 59 Cal.4th 635 (*Vargas*). He further contends the trial court erred when it refused to strike both of his prior strikes in the interest of justice. (§1385; *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.) Respondent contends the trial court did not abuse its sentencing discretion. We agree.

The felony information filed against appellant alleged two prior "strike" convictions, for kidnapping Kaci A. (§207) and for making a criminal threat to her.[2] (§ 422.) Appellant pleaded guilty to these and other offenses.

The probation report indicated that appellant accosted Kaci A., his former girlfriend, at about 9 p.m. as she was walking to her car which was parked near Solimar Beach in Ventura. Kaci asked appellant to leave many times; he refused. He eventually got into the passenger seat of her car and refused to leave. Kaci made a cell phone call, and then told appellant her brother was coming to help her. Appellant replied, "'Yeah, I want your brother to come down, 'cause you're gonna find him at the end of the pier at the bottom of the ocean. And if you try anything, the same thing's going to happen to you.'" Kaci started crying and repeatedly asked appellant to leave. He finally got out of the car, but he then picked Kaci up, threw her over his shoulder, and

---

[2] Appellant's offenses against Jennifer B. were alleged as five-year prior serious felony convictions (§ 667, subd. (a)), and convictions for which he served prior prison terms. (§ 667.5.)

10

carried her about 50 yards to the beach.  She broke free and ran back to her car.  Appellant followed, using his body to prevent Kaci from closing the car door.  He pulled out a pocket knife, pointed the blade at Kaci and told her he did not care who he stabbed or who he killed.  At that point, Kaci's brother arrived and pushed appellant away.  This caused appellant to drop the knife.  Kaci grabbed it and fled with her brother.

Relying on *Vargas,* appellant contends the trial court should have dismissed one of his strike convictions because the kidnapping and criminal threat arose from a single act against a single victim.  Appellant's reliance on *Vargas* is misplaced.  There, the defendant was convicted of burglary and conspiracy to commit grand theft after she and a partner broke into a home and stole various items.  She also had prior convictions of carjacking and robbery based on the single act of forcibly taking a victim's car.  (*Vargas, supra*, 59 Cal.4th at p. 645.)  Our Supreme Court held the trial court "was required to dismiss one of defendant's two prior strike convictions," because the failure to do so would be "inconsistent with the intent underlying" the Three Strikes law.  (*Ibid*.)

The court reasoned voters would have understood "that a person would have three chances – three swings of the bat, if you will − before the harshest penalty could be imposed.  The public also would have understood that no one can be called for two strikes on just one swing.  Permitting the trial court below to treat defendant's 1999 robbery and carjacking convictions as separate strikes − despite the fact they were based on a single criminal act − would do just that, and thus contravene the voter's clear understanding of how the Three Strikes law was intended to work." (*Vargas*, *supra*, 59 Cal.4th at p. 646.)

*Vargas* explained its holding was consistent with the holding in *People v. Benson* (1998) 18 Cal.4th 24 *(Benson)*, which remained good law.  In *Benson*, the defendant had "two prior strike convictions based on a single incident: after returning his neighbor's vacuum cleaner, which he had borrowed, he returned to her apartment ostensibly to retrieve his keys, whereupon he grabbed her, forced her to the floor, and eventually stabbed her multiple times.  Based on this incident, he was convicted of residential burglary (§ 459) and assault with the intent to commit murder (former § 217).  Because these two felonies were based on the same course of conduct, the trial court stayed one of the defendant's two prior convictions pursuant to section 654, which expressly prohibits separate punishment for two crimes based on the same act, but has been interpreted to also preclude multiple punishment for two or more crimes occurring within the same course of conduct pursuant to a single intent." (*Vargas, supra,* 59 Cal.4th at p. 642, fn. omitted.)

After the defendant in *Benson* reoffended, he argued one of his prior convictions should be stricken for purposes of sentencing, because both convictions were based on the same course of conduct.  The *Benson* court disagreed, holding that a prior conviction may qualify as a strike even if the sentence for that conviction was stayed under section 654. (*Benson, supra,* 18 Cal.4th at pp. 29-30.)  "[T]he language of section 1170.12, subdivision (b)(1), unequivocally establishes that the electorate intended to qualify as separate strikes *each* prior conviction that a defendant incurred relating to the commission of a serious or violent felony, notwithstanding the circumstance that the trial court, in the earlier proceeding, may have stayed sentence on one

12

or more of the serious or violent felonies under compulsion of the provisions of section 654." (*Id.* at p. 31.)

We conclude, as did the trial court, that appellant's prior strike convictions are more analogous to the priors at issue in *Benson* than those at issue in *Vargas*. According to the probation report appellant first threatened Kaci A. and then committed kidnapping by picking her up and carrying her away from the road and onto the beach. He did not threaten her as he was in the process of carrying her to the beach; he first threatened her and then kidnapped her. The two offenses, although they may have been part of a continuous course of conduct for purposes of section 654, were not a "single act," like the carjacking and robbery in *Vargas*. The trial court correctly declined to dismiss one of appellant's prior convictions under *Vargas*.

Appellant next contends the trial court abused its discretion when it refused to strike one or both of his prior convictions in the interest of justice. (§ 1385; *People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th 497.) He contends the trial court failed to give enough weight to several mitigating factors: appellant was out of custody and release from parole for four years and four months before reoffending; there is no evidence he violated the conditions of his two-year long parole; his strike offenses were his first criminal convictions; the strike offenses were committed in close proximity, during a single course of conduct; and his prior offenses did not involve the use of weapons or the infliction of great bodily injury.

The trial court declined to strike appellant's prior convictions because it found appellant had not led a crime-free life and had instead engaged in similar criminal conduct with similar victims for more than a decade. It further found that

appellant's criminal history indicated he posed a danger to the women with whom he had relationships. The trial court believed there was a high likelihood appellant would re-offend if he was released and also that appellant's offenses were committed against particularly vulnerable victims. It was the trial court's opinion that the purpose of the Three Strikes law was to increase prison terms for repeat felons like appellant.

When deciding a section 1385 motion to strike, the trial court is required to consider "whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) It is only in an extraordinary case that a defendant can be deemed outside the spirit of the Three Strikes law. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).)

We review the trial court's denial of a section 1385 motion for abuse of its broad sentencing discretion. The ruling will not be disturbed on appeal unless it is "so irrational or arbitrary that no reasonable person could agree with it." (*Carmony*, *supra*, 33 Cal.4th at p. 377.) Appellant has the burden to show an abuse of discretion. (*People v. Jordan* (1986) 42 Cal.3d 308, 316.) In the absence of such a showing, we are required to presume the trial court acted to achieve legitimate sentencing objectives. (*People v. Superior Court* (*Alvarez*) (1997) 14 Cal.4th 968, 977-978.) We are also required to presume the trial court considered all of the relevant factors in the absence of an affirmative record to the contrary. (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)

14

There was no abuse of discretion here. As the trial court reasoned, appellant had not led a crime-free life and had continued to engage in the same abuse of his intimate partners after his release from prison. His victims were always particularly vulnerable to abuse because they were physically much smaller than appellant and were emotionally and sometimes financially dependent on him. The trial court did not act irrationally or arbitrarily when it concluded that appellant continued to pose a danger to women despite his prior prison terms and satisfactory completion of parole. Nothing in the record indicates the trial court based its decision on improper reasons or that it failed to consider relevant factors. There was no abuse of discretion.

Victim Restitution. At sentencing, the trial court ordered appellant to pay victim restitution of $13,445.40, to account for the expenses Krysta W. and her son incurred to relocate and access mental health treatment. (§ 1202.4.) The amount of restitution awarded is consistent with the recommendation of the probation department as noted in its report to the trial court. Appellant received a copy of the report. He now contends the trial court abused its discretion in imposing restitution because there no evidence supports the amount awarded and appellant was not afforded a hearing to contest the amount.

These contentions have been waived. Appellant did not object to the restitution fine in the trial court. Section 1202.4, subdivision (f) mandates, "The court shall order full restitution." The statute then notes, "The defendant has the right to a hearing before a judge to dispute the determination of the amount of restitution. The court may modify the amount, on its own motion or on the motion of the district attorney, the victim or victims, or

15

the defendant." (§1202.4, subd. (f)(1).)  Appellant never requested a hearing on the amount of restitution nor did he file a motion to modify that amount.  "[A] defendant's failure to object in the trial court to the imposition of a restitution fine constitutes a waiver of the right to complain thereof on appeal." (*People v. Gibson* (1994) 27 Cal.App.4th 1466, 1469.)

Had the issue not been waived, we would reject it.  "A restitution order is reviewed for abuse of discretion and will not be reversed unless it is arbitrary or capricious." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1542.)  "Section 1202.4 does not, by its terms, require any particular kind of proof." (*Id.* at pp. 1542-1543.)  The trial court is entitled to rely on the probation report.  "'When the probation report includes information on the amount of the victim's loss and a recommendation as to the amount of restitution, the defendant must come forward with contrary information to challenge that amount.'" (*People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048, quoting *People v. Foster* (1993) 14 Cal.App.4th 939, 947.)

Here, the probation report stated that Krysta and her son incurred $13,445.40 in expenses for relocation and mental health services.  The trial court's order was based on this information.  Appellant has provided no information challenging the amount of the award.  We conclude the trial court did not abuse its discretion.

CONCLUSION

The judgment is affirmed.

NOT TO BE PUBLISHED.

YEGAN, Acting P. J.

We concur:


PERREN, J.


TANGEMAN, J.

Jeffrey G. Bennett, Judge

Superior Court County of Ventura

_____

Susan S. Bauguess, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Steven D. Matthews, Supervising Deputy Attorney General, Rama R. Maline, Deputy Attorney General, for Plaintiff and Respondent.