Filed 2/27/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>JOSHUA JERECO PITTMAN,<br><br>    Defendant and Appellant. | A166669<br><br>(San Francisco City & County Super. Ct. Nos. SCN233607, CRI20013179) |

Defendant Joshua Jereco Pittman appeals a postconviction order in which the trial court ordered him to pay $6,700 in restitution for jewelry taken from the home of victims Michael F. and Betty F.  Pittman's appointed appellate counsel filed a brief asking this court to conduct an independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436.[1]  Counsel informed Pittman of his right to file a supplemental brief.  Pittman did not file one.

After reviewing the record, we directed counsel for the parties to file supplemental briefs addressing (1) whether the court abused its discretion in

---

[1] We need not decide whether an independent review of the record is required in this appeal, as we have exercised our discretion to conduct an independent review in any event.  (See *People v. Delgadillo* (2022) 14 Cal.5th 216, 222, 224–225, 231–232 & fn. 5 [independent record review is not required in appeals of certain postconviction orders; even if not required, reviewing court may exercise discretion to conduct an independent review].)

1

basing the $6,700 figure on victim estimates of property values contained in a police report, and (2) questions related to whether there is sufficient evidence of the replacement value of the stolen property to affirm the court's order. Having considered the supplemental briefs, we find no basis to reverse or modify the restitution order, and we therefore affirm.

## I. BACKGROUND

### A. *The Charges, Plea, and Sentence*

The judgment of conviction was based on a negotiated disposition. An information filed in February 2021 charged Pittman and codefendant Deandre Quininne with multiple felony offenses committed on October 9, 2020, and November 4, 2020. As to Pittman, the information included four charges of first degree residential burglary involving various victims (Pen. Code,[2] § 459; see § 460, subd. (a); counts 1, 5, 6, and 7) and one count of first degree residential robbery committed against 16-year-old Allison S. (§ 211; see § 212.5, subd. (a); count 2).

The information alleged two of the burglaries (counts 1 and 5) were committed while a person other than an accomplice was present (§ 667.5, subd. (c)(21)). As to the count 2 robbery, it was alleged the defendants acted in concert with two or more other persons (§ 213, subd. (a)(1)(A)). The information also alleged Pittman committed the charged offenses while on bail (§ 12022.1, subd. (b)); he had served a prior prison term (§ 667.5, subd. (a)); and he was on parole at the time of the offenses (§ 1203.085, subd. (b)).

On December 17, 2021, as part of a negotiated disposition, the information was amended to include two counts of second degree burglary (§ 459; counts 8 and 9), and Pittman entered a guilty plea to those two

---

[2] Undesignated statutory references are to the Penal Code.

2

counts. The remaining counts and allegations were dismissed. The court imposed concurrent two-year prison terms for counts 8 and 9 and released Pittman to his parole officer because his pretrial confinement time equaled or exceeded the length of his new sentence (see § 1170, subd. (a)(3)). A restitution hearing was set.

As we discuss further below, at the restitution hearing on August 17, 2022, the court ordered Pittman and Quininne to pay (with joint and several liability) $6,700 in restitution to victims Michael F. and Betty F. (who are spouses). Michael F. was the victim alleged in original count 6. The court entered a written restitution order for $6,700 on September 14, 2022. An amended order was entered on March 16, 2023, with no change to the amount ordered.

On October 12, 2022, Pittman filed a timely notice of appeal of the restitution order.

## B. *Facts Underlying the Count 6 Burglary*

At approximately 2:00 p.m. on October 9, 2020, San Francisco Police Officer Chu investigated a residential burglary in San Francisco. Victim Michael F. told Officer Chu that he saw two people leaving the house, and that he then went inside to find it had been "ransacked." Jewelry and a safe were reported stolen, with an estimated combined value of $10,000.

Victim Betty F. provided video footage, recorded from 12:50 p.m. to 1:30 p.m. on the day of the burglary, showing two men in front of the house. GPS data from an ankle monitoring bracelet worn by Pittman (who was on parole) showed he was at the burglarized house from 1:19 p.m. to 1:27 p.m. on October 9, 2020.

## II. DISCUSSION

### A. *Additional Background:  The Restitution Hearing*

At the contested restitution hearing for both Pittman and Quininne on August 17, 2022, the trial court stated there were "places in the police reports that noted the items that were taken," and the court had "the restitution forms that the victims filled out as well."  Defense counsel confirmed they had received the prosecutor's briefing and exhibits filed in support of the restitution request pertaining to Michael F. and Betty F.  (As we explain further below, however, the documents discussed by the court and the parties at the restitution hearing are not in the appellate record for this appeal.)

The prosecutor stated the restitution request included a number of items of jewelry (for which there were no receipts), with the value of the stolen property totaling $37,815.  There was also damage "to the bathroom floor and vanity" amounting to $5,500, as well as $85 for damage to the front door.  Counsel for the defendants did not put on evidence, but they raised objections to the prosecution's showing, including suggesting the victims should have been brought to testify.

Pittman's counsel objected that the items and values claimed by the victims at the time of the hearing differed from what was stated in the police report, including as to the values identified for some jewelry items.  As an example, counsel stated "the five-carat sapphire diamond ring in the police report is estimated at $5,000.  Now it's estimated at approximately $15,000."  Counsel further objected that, "even for the items that are actually referenced in the police report, I don't believe there's sufficient documentation or testimony, such as actual witness testimony subject to cross-examination, to support a restitution order here."  Quininne's counsel raised similar objections.

4

The prosecutor responded that a victim's estimate of the value of stolen jewelry provides a sufficient basis to award restitution. The prosecutor stated that, because the victims received the jewelry as wedding gifts several decades earlier, they did not have receipts. The prosecutor also argued that the defense has the burden to disprove a restitution claim, and that restitution may be based on documentary evidence rather than live testimony, "such that victims don't have to come to court in order to seek restitution." The prosecutor noted either side "could have issued subpoenas in this case."

The court found it could base its restitution award "on what the victim has stated in—both in the restitution report and to the police." As to the differing estimates in the two statements, the court stated it would award the amounts first given by the victims and reflected in the police incident report. The court stated: "[T]he Court finds that the discrepancy between what the victim said something was worth at the time of the incident and said that—and its noted in the incident report, and then later in a restitution form changed those values, the Court would be more inclined to go with what the [victim] first stated the value of those items were." The court awarded a total of $6,700, consisting of $150 for the safe, $5,000 for a sapphire ring with gold bands, $500 for two pearl necklaces, $150 for two pearl earrings, $500 for a bracelet, and $400 for a necklace and earring set.[3]

_____

[3] The restitutionary award was ordered for conduct underlying count 6, even though count 6 was dismissed under the plea agreement. This is permissible where the defendant has made a *Harvey* waiver. (See § 1192.3, subd. (b); *People v. Harvey* (1979) 25 Cal.3d 754.) Because there is nothing to the contrary in the record here, we presume such a waiver was made.

As noted, at the restitution hearing, the court and the parties focused on certain documents submitted by the prosecution with its restitution request—specifically, the police incident report and the later restitution forms—that reflected the victims' estimates of the values of items taken from their home. Those documents, however, are not in the record for this appeal.

On January 4, 2023, Pittman's appellate counsel filed with this court a motion to augment the appellate record to include "[t]he People's request for victim restitution reviewed by the trial court" at the August 17, 2022 restitution hearing, as well as the written restitution orders later issued by the court on September 14, 2022. We granted the motion on January 24, 2023, directing that the requested items be sent to this court and to appellate counsel within 30 days. On February 23, 2023, the trial court clerk filed with this court a record augmentation that included the September 14, 2022 orders, but stated in a declaration that it had not been possible to locate the restitution request that the trial court reviewed at the August 17, 2022 hearing.

## B. *Legal Standards*

Section 1202.4, subdivision (f) provides: "[I]n every case in which a victim has suffered economic loss as a result of the defendant's conduct, the court shall require that the defendant make restitution to the victim or victims in an amount established by court order, based on the amount of loss claimed by the victim or victims or any other showing to the court." Restitution "shall be of a dollar amount that is sufficient to fully reimburse the victim or victims for every determined economic loss incurred as the result of the defendant's criminal conduct . . . ." (§ 1202.4, subd. (f)(3).) "The value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A).)

6

The victim must make a prima facie showing of the loss, which the defendant is entitled to rebut. "Once the victim makes a prima facie showing of economic losses incurred as a result of the defendant's criminal acts, the burden shifts to the defendant to disprove the amount of losses claimed by the victim. [Citation.] The defendant has the burden of rebutting the victim's statement of losses, and to do so, may submit evidence to prove the amount claimed exceeds the repair or replacement cost of damaged or stolen property." (*People v. Gemelli* (2008) 161 Cal.App.4th 1539, 1543 (*Gemelli*).)

" 'The standard of review of a restitution order is abuse of discretion. "A victim's restitution right is to be broadly and liberally construed." [Citation.] " 'When there is a factual and rational basis for the amount of restitution ordered by the trial court, no abuse of discretion will be found by the reviewing court.' " ' " (*People v. Ung* (2023) 88 Cal.App.5th 997, 1001.)

## C. *Victim Estimates in the Police Report*

We asked the parties to submit supplemental briefs addressing whether the trial court abused its discretion by basing its $6,700 restitution order on victim estimates contained in a police report. We directed the parties to consider the differing views in appellate decisions (which we discuss below) about relying on victim estimates contained in probation reports. Having considered the parties' briefs, we conclude the trial court did not abuse its discretion.

In *People v. Harvest* (2000) 84 Cal.App.4th 641, 653, a panel in this division concluded a victim's claim in a probation report did *not* support a restitution order. As we shall explain, however, the evolution of the case law under section 1202.4, subdivision (f), persuades us to adopt a more flexible approach. The defendant in *Harvest* was convicted of one count of first degree murder and one count of voluntary manslaughter. (*Harvest,* at p. 645.) The trial court ordered that the defendant pay restitution to each of

7

the victims' families for their funeral expenses. (*Id.* at pp. 645, 652.) We reversed the restitution order in part, noting that the first victim's family "could support their claim with documentation and stood ready to testify, but the [other] claim had neither of these supports." (*Id.* at p. 653.) Rather "[t]here was [just] mention of the . . . claim in the probation officer's report." (*Ibid.*) We stated information in the probation report "may satisfy notice requirements for due process [citation], but it cannot take the place of evidence." (*Ibid.*)

Similarly, in *People v. Vournazos* (1988) 198 Cal.App.3d 948, 953, 958–959, the Court of Appeal reversed a $2,180 restitution order that was based on a probation officer's recommendation. The appellate court stated: "[T]he trial court relied entirely on the recommendation of defendant's probation officer who, in turn, derived the figure solely from [the victim's] statement of loss and his discussions with [the victim]. Neither the statement nor the testimony of the probation officer established that the sum claimed by [the victim] for loss of property was based on the replacement cost of the property. . . . While a defendant bears the burden of proving that the amount of restitution claimed by the victim exceeds repair or replacement cost of lost or damaged property [citation], defendant here was not required to meet that burden inasmuch as the replacement . . . cost of [the victim's] property was not established." (*Id.* at pp. 958–959; accord, *In re Travis J.* (2013) 222 Cal.App.4th 187, 204 [citing *Vournazos* and *Harvest*; "The replacement or repair cost of the victim's property cannot be established simply by statements made by the victim to the defendant's probation officer."].)[4]

---

[4] See also *In re K.F.* (2009) 173 Cal.App.4th 655, 665 (burden of refutation is not imposed on defendant "merely by asserting that a stated amount is sought as restitution").

But a number of courts have held, contrary to *Harvest* and *Vournazos*, that a trial court *may* accept, as prima facie evidence, a victim's estimate in a probation report, thus shifting to the defendant the burden to show the requested amount exceeds the cost of replacement or repair. In *People v. Foster* (1993) 14 Cal.App.4th 939, 943, 946–947 (*Foster*), superseded by statute on other grounds as stated in *People v. Sexton* (1995) 33 Cal.App.4th 64, 69–71, disapproved on another ground in *People v. Birkett* (1999) 21 Cal.4th 226, 247, fn. 20, the Court of Appeal upheld a restitution order to replace the value of items taken in the burglary of a cabin. The restitution amount was based on the recommendation of the probation officer, which incorporated the victim's statement of loss. (*Foster*, at p. 944.) The *Foster* court disapproved of requiring a victim to provide more than a statement of losses to establish replacement cost, and the court criticized *Vournazos*, stating that such a requirement "imposes an unwarranted burden on the trial court, the prosecutor, and the victim." (*Id.* at p. 946.)

Similarly, in *Gemelli, supra,* 161 Cal.App.4th at pp. 1543, 1541, the appellate court affirmed a restitution order based on the probation officer's report with an attached statement from the victim of the burglary of a restaurant about sustained losses. The court concluded this showing was sufficient to shift the burden to the defendant to disprove the amount claimed by the victim. (*Id.* at p. 1543; accord, *People v. Holmberg* (2011) 195 Cal.App.4th 1310, 1320 [" ' "This is so because a hearing to establish the amount of restitution does not require the formalities of other phases of a criminal prosecution. [Citation.] When the probation report includes information on the amount of the victim's loss and a recommendation as to

9

the amount of restitution, the defendant must come forward with contrary information to challenge that amount." ' "].)[5]

We now conclude our broad statement in *Harvest*—that a victim estimate in a probation report is not a sufficient showing of value for restitution purposes—is unduly restrictive. We hold that, depending on the circumstances and as a matter of discretion, a trial court may find a victim estimate is sufficient to make a prima facie showing of loss, subject to rebuttal by the defendant. (§ 1202.4, subd. (f)(1); *Gemelli, supra,* 161 Cal.App.4th at p. 1543.)

We are convinced that the approach taken in the *Foster* line of cases— which now states the majority view—is more consistent with the public policy and constitutional requirement that victims of crime be made whole. (Cal. Const., art. I, § 28, subd. (b)(13); § 1202.4, subds. (a), (f).) Implementing this policy, section 1202.4 requires that the court order "full restitution," and provides broadly that a restitution order is to be "based on the amount of loss claimed by the victim or victims or any other showing to the court." (§ 1202.4, subd. (f).) As noted, once a prima facie showing has been made, the defendant may seek to disprove the amount claimed. (§ 1202.4, subd. (f)(1); *Gemelli, supra,* 161 Cal.App.4th at p. 1543.) In light of this statutory language and structure, we conclude there is no basis to impose—at the prima facie stage—a categorical rule that victim estimates of loss are

---

[5] Other appellate courts have reached similar conclusions. (E.g., *People v. Collins* (2003) 111 Cal.App.4th 726, 734 [" 'When the probation report includes a discussion of the victim's loss and a recommendation on the amount of restitution, the defendant must come forward with contrary information to challenge that amount.' "]; *People v. Keichler* (2005) 129 Cal.App.4th 1039, 1048; *People v. Hove* (1999) 76 Cal.App.4th 1266, 1275–1276; *People v. Pinedo* (1998) 60 Cal.App.4th 1403, 1406; *In re S.S.* (1995) 37 Cal.App.4th 543, 546–547.)

10

insufficient, particularly since such estimates may in some cases be the only information reasonably obtainable to support a restitution request. (*Foster*, *supra*, 14 Cal.App.4th at p. 946 & fn. 5.) Instead, consideration of such estimates is within the trial court's broad discretion in making a restitution order.

Here, as noted, the trial court had before it victim estimates contained in a police report, as well as in the restitution forms that were submitted later. For the reasons discussed above, we find no abuse of discretion by the trial court in considering the victim estimates in these documents.

Pittman suggests the police report here may have lacked information that was included in the probation reports discussed in some of the case law addressing this issue, such as a detailed breakdown of losses or a recommendation by the probation officer that restitution in a certain amount should be ordered. (See, e.g., *People v. Holmberg, supra,* 195 Cal.App.4th at p. 1320; *Gemelli*, *supra*, 161 Cal.App.4th at p. 1544.) But the record in this appeal does not support Pittman's argument. As noted, the appellate record does not include the police report or the restitution forms that were reviewed by the trial court. "[O]n appeal a judgment is presumed correct, and a party attacking the judgment, or any part of it, must affirmatively demonstrate prejudicial error." (*People v. Garza* (2005) 35 Cal.4th 866, 881.) Having rejected the view that victim estimates are categorically insufficient at the prima facie stage, we have no basis on this record to conclude that the particular estimates here were insufficient or that the trial court abused its discretion by relying on them.

We also note the record before the trial court here was not limited to the police report. Instead, as the trial court stated, it could consider and base its restitution order on the police report *and* the restitution forms. Although

the court ultimately selected the lower estimates in the police report in setting the amount of restitution, it could also consider the restitution forms and any information they contained about the items taken and their estimated values. As noted, since these documents are not in the appellate record, we cannot conclude the court abused its discretion based on any supposed deficiency in the documents.

## D. *Replacement Value*

In our supplemental briefing order, we asked the parties to address questions related to the sufficiency of evidence of the replacement value of the stolen property: (1) whether this court should address the sufficiency of evidence of replacement value; (2) if so, whether the People were required to present evidence of replacement value under the circumstances of this case; and (3) if they were required to do so, whether there is sufficient evidence of replacement value to affirm the trial court's restitution order.

Section 1202.4 provides that "[t]he value of stolen or damaged property shall be the replacement cost of like property, or the actual cost of repairing the property when repair is possible." (§ 1202.4, subd. (f)(3)(A); see *People v. Ung, supra,* 88 Cal.App.5th at pp. 1002–1003; *People v. Thygesen* (1999) 69 Cal.App.4th 988, 995–996.) In light of this governing standard, we agree with the parties' apparent view that it is appropriate for this court to address the question of evidentiary sufficiency, and that the People were required to make a prima facie showing of the replacement value of the stolen property.[6]

As to whether there is sufficient evidence of replacement value, Pittman contends that more than a victim's "bare statement" in a probation

---

[6] We therefore need not address Pittman's claim that his trial counsel provided ineffective assistance by failing to argue specifically that the restitution request was not supported by evidence of replacement value.

report or police report should be required.  Pittman argues that, during the discussion of the relevant documents at the restitution hearing, the trial court did not specifically refer to "anything in the [police] report indicating that the victim had estimated replacement value of the lost items."

While the court (like counsel) did not use the terms "replacement value" or "replacement cost" at the restitution hearing, we will not assume the court did not have the applicable legal standard in mind.  And, as discussed above, we will not assume the documents reviewed by the court (which are not before us) contained insufficient evidence of replacement value to support the amount of restitution ordered.  We reject Pittman's argument the restitution order should be stricken as not reflecting replacement value.

For his part, the Attorney General contends the trial court erred by ordering restitution based on the *lower* victim estimates included in the police report.  The Attorney General argues the revised, higher estimates included in the restitution forms were more reflective of the replacement value of the jewelry, so the court's decision not to use those figures was "arbitrar[y]" and resulted in an "unlawful" or " ' "unauthorized" ' " sentence that this court can and must correct on appeal.  The Attorney General adds it was arbitrary and unlawful for the court to decline to order restitution for claimed damage to the bathroom floor in the victims' home.

But again, in the absence of the documents on which the trial court relied, we cannot conclude some of the jewelry estimates are more reflective of replacement value than others.  We have no basis to find the amount of restitution ordered is defective (let alone unlawful) on that ground.

Nor is there a basis in the reporter's transcript of the restitution hearing to conclude (as the Attorney General urges) that the court's decision not to award restitution for damage to the bathroom floor was arbitrary or

13

resulted in an unauthorized sentence. Although the Attorney General asserts the court incorrectly based this decision on a belief the damage might be covered by insurance, it appears the court was instead focused on the fact the damage to the floor was not mentioned in the police report and was not supported by an invoice for the repair amount.[7] This was not an arbitrary or irrational decision. Even assuming the Attorney General's arguments on these points are within the scope of our supplemental briefing order (which directed the parties to address issues related to amounts that *were* included in the restitution order), we find no basis to reverse or modify the trial court's order.

## III. DISPOSITION

The August 17, 2022 restitution order is affirmed.

STREETER, J.

WE CONCUR:

BROWN, P. J.
SMILEY, J.*

---

[7] The court differentiated the types of evidence it would expect to see in support of the stolen jewelry on the one hand, and the damage to the floor on the other. The court stated: "If they had a contractor come, that's very different than this jewelry. Jewelry that's old and was from 45 years of marriage, where they may not have retained receipts, that's one thing. If they had the bathroom floor repaired, there should be an invoice here."

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

Trial Court:   Superior Court of California, City and County of San Francisco

Trial Judge:   Hon. Carolyn Gold

Counsel:       Randall Conner, under appointment by the Court of Appeal, for
               Defendant and Appellant.

               Rob Bonta, Attorney General, Lance E. Winters, Chief
               Assistant Attorney General, Jeffrey M. Laurence, Senior
               Assistant Attorney General, Donna M. Provenzano and
               Catherine A. Rivlin, Supervising Deputy Attorneys General,
               for Plaintiff and Respondent.